# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE.**   **2. PLEASE TYPE OR PRINT.**   **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| Charron, | U.S.D.C., S.D.N.Y. | Hon. William H. Pauley III |
| Plaintiff, | **Date the Order or Judgment Appealed from was Entered on the Docket:** | **District Court Docket No.:** |
| v. | December 31, 2014 | 1:12-cv-6837 (WHP) |
| Sallyport Global Holdings, Inc., et al., | **Date the Notice of Appeal was Filed:** | **Is this a Cross Appeal?** |
| Defendants. | January 28, 2015 | Yes   ✓ No |

| **Attorney(s) for Appellant(s):** | Counsel's Name: | Address: | Telephone No.: | Fax No.: | E-mail: |
|---|---|---|---|---|---|
| Plaintiff<br><br>✓ Defendant | Jay P. Lefkowitz, P.C. | Kirkland & Ellis LLP 601 Lexington Ave. New York, NY 10011 | (212) 446-4800 | (212) 446-4900 | lefkowitz@ kirkland.com |

| **Attorney(s) for Appellee(s):** | Counsel's Name: | Address: | Telephone No.: | Fax No.: | E-mail: |
|---|---|---|---|---|---|
| ✓ Plaintiff<br><br>Defendant | Brian A. Glasser | Bailey Glasser LLP 209 Capitol Street Charleston, WV 25301 | (304) 345-6555 | (304) 342-1110 | bglasser@ baileyglasser.com |

| Has Transcript Been Prepared? | Approx. Number of Transcript Pages: | Number of Exhibits Appended to Transcript: | Has this matter been before this Circuit previously?   Yes   ✓ No |
|---|---|---|---|
| Yes | 2,000 | | If Yes, provide the following:<br><br>Case Name:<br><br>2d Cir. Docket No.:          Reporter Citation: (i.e., F.3d or Fed. App.) |

***ADDENDUM "A":*** COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

***ADDENDUM "B":*** COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

### PART A: JURISDICTION

| 1. Federal Jurisdiction | | 2. Appellate Jurisdiction | |
|---|---|---|---|
| U.S. a party | ✓ Diversity | ✓ Final Decision | Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b)) |
| Federal question (U.S. not a party) | Other (specify): _____ | Interlocutory Decision Appealable As of Right | Other (specify): _____ |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**PART B:   DISTRICT  COURT DISPOSITION    (Check as many as apply)**

| 1. Stage of Proceedings | 2. Type of Judgment/Order Appealed | 3. Relief |
|---|---|---|
| – Pre-trial | Default judgment | ✓ Damages: | Injunctions: |
| During trial | Dismissal/FRCP 12(b)(1) | | |
| ✓ After trial | lack of subj. matter juris. | ✓ Sought: $ 38.2 M | Preliminary |
| | Dismissal/FRCP 12(b)(6) | ✓ Granted: $ 21.2 M (Net) | Permanent |
| | failure to state a claim | Denied: $ _____ | Denied |
| | Dismissal/28 U.S.C. § 1915(e)(2) | | |
| | frivolous complaint | | |
| | Dismissal/28 U.S.C. § 1915(e)(2) | | |
| | other dismissal | | |

Type of Judgment/Order Appealed (second column):
- Dismissal/other jurisdiction
- Dismissal/merit
- ✓ Judgment / Decision of the Court
- Summary judgment
- Declaratory judgment
- Jury verdict
- Judgment NOV
- Directed verdict
- Other (specify):

---

**PART C:  NATURE OF SUIT   (Check as many as apply)**

**1. Federal Statutes**

| | | |
|---|---|---|
| Antitrust | Communications | Freedom of Information Act |
| Bankruptcy | Consumer Protection | Immigration |
| Banks/Banking | Copyright □ Patent | Labor |
| Civil Rights | Trademark | OSHA |
| Commerce, | Election | Securities |
| Energy | Soc. Security | Tax |
| Commodities | Environmental | |
| Other (specify): _____ | | |

**2. Torts**
- Admiralty/Maritime
- Assault / Defamation
- FELA
- Products Liability
- Other (Specify):

**3. Contracts**
- Admiralty/Maritime
- Arbitration
- ✓ Commercial
- Employment
- Insurance
- Negotiable instruments
- Other Specify

**4. Prisoner Petitions**
- Civil Rights
- Habeas Corpus
- Mandamus
- Parole
- Vacate Sentence
- Other

**5. Other**
- Forfeiture/Penalty
- Real Property
- Treaty (specify): _____
- Other (specify): _____

**6. General**
- Arbitration
- Attorney Disqualification
- Class Action
- Counsel Fees
- Shareholder Derivative
- Transfer

**7.** Will appeal raise constitutional issue(s)?
   Yes    ✓ No

Will appeal raise a matter of first impression?
   Yes    ✓ No

---

1. Is any matter relative to this appeal still pending below?  ✓ Yes, specify:  FRCP 62 Proceedings          No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

   (A)   Arises from substantially the same case or controversy as this appeal?          Yes    ✓ No

   (B)   Involves an issue that is substantially similar or related to an issue in this appeal?          Yes    ✓ No

If yes, state whether   "A," or   'B," or   both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| | | | |

Name of Appellant:

---

| Date: February 11, 2015 | Signature of Counsel of Record:  /s  Jay P. Lefkowitz, P.C. |
|---|---|

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1.   Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2.   File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3.   Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE:  IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.**  *SEE* LOCAL RULE 12.1.

<u>ADDENDUM A TO FORM C</u>

*Charron v. Sallyport Global Holdings, Inc., et al.*, Case No. 15-256

1. <u>Nature of the Action</u>.  This action arises out of the dissolution of a partnership between Plaintiff Thomas W. Charron, Jr. and Defendant John P. DeBlasio.  Charron and DeBlasio were each 50% owners of Sallyport Global Holdings, Inc. ("SGH") until December 2010, when DeBlasio purchased Charron's 50% interest pursuant to the terms of a Stock Purchase Agreement (the "SPA").  Beyond the approximately $41 million Charron received for his 50% interest, the SPA contained a provision (the "Windfall Provision") stating that if DeBlasio sold SGH within 1 year for $65 million or more, Charron would be entitled to additional compensation.  In June 2011, DeBlasio and certain affiliates entered into an arm's length transaction with DC Capital Partners ("DCCP") whereby SGH was sold for $64.5 million.

   After learning of the transaction with DCCP, Charron commenced this action in September 2012, claiming, among other things, that the Windfall Provision was triggered because the true value of the sale was in excess of $65 million and that, under his reading of the Windfall Provision, he was entitled to 20% of the total proceeds of the sale.  SGH counterclaimed for various amounts withdrawn by Charron from SGH around the time of the SPA.

2. <u>The Result Below</u>.  After a bench trial, the District Court below issued a decision dated December 10, 2014 (amended on December 24, 2014), in which the District Court held that Windfall Provision was triggered because the value of the SGH sale was actually $81,736,578, and further held that Charron was entitled to 20% of that amount, or $16,347,315.60.  The District Court awarded $5,111,111.39 in pre-judgment interest through December 24, 2014, plus an additional $4,030.84 per day in pre-judgment interest until

December 31, 2014.  The District Court further found in favor of SGH on its counterclaim and awarded $227,364.22 in compensatory damages plus prejudgment interest of $55,202.79 through December 24, 2014 and $37.37 in pre-judgment interest per day until December 31, 2014.  Therefore, the net award to Plaintiff totaled $21,175,859.98 plus $3,993.47 per day of additional prejudgment interest for the period between December 24 and 31, 2014.  After December 31, 2014, interest accrues at the applicable federal interest rate of 0.23% until any final judgment is paid.

3.  <u>Copies of the Notice of Appeal and District Court Docket Sheet</u>.  Copies of these documents are annexed hereto.

4.  <u>Copies of Relevant Opinions and Orders</u>.  A copy of the District Court's December 24, 2014 Amended Opinion & Order is annexed hereto.

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THOMAS W. CHARRON, JR., individually and as Trustee of the Thomas W. Charron Jr. Grantor Retained Annuity Trust Dated July 8, 2010, <br><br> Plaintiff, <br><br> v. <br><br> SALLYPORT GLOBAL HOLDINGS, INC., et al., <br><br> Defendants. | Case No. 1:12-cv-6837 (WHP) |

<u>**NOTICE OF APPEAL**</u>

PLEASE TAKE NOTICE that Defendants JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc., and Gian Paul DeBlasio (a/k/a John P. DeBlasio) hereby appeal to the United States Court of Appeals for the Second Circuit from each and every part of the final judgment in favor of Plaintiff Thomas W. Charron, Jr., individually and as Trustee of the Thomas W. Charron Jr. Grantor Retained Annuity Trust Dated July 8, 2010, entered in this Action on the 31st day of December 2014.

Dated: January 28, 2015           __*/s Jay P. Lefkowitz, P.C.*__
       New York, New York

                                      Jay P. Lefkowitz, P.C.
                                      David S. Flugman
                                      KIRKLAND & ELLIS LLP
                                      601 Lexington Avenue
                                      New York, New York 10022
                                      Telephone:     (212) 446-4800
                                        Facsimile:     (212) 446-4900

                                      -- and --

Lisa S. Blatt
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004
Telephone:     (202) 942-5000
Facsimile:      (202) 942-5999

*Attorneys for Defendants JPD Private Trust*
*Company, Ltd., Sallyport Global Holdings,*
*Inc., and Gian Paul DeBlasio*

Case 15-256, Document 6, 02/11/2015, 1437190, Page7 of 98

CLOSED,APPEAL,CASREF,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:12-cv-06837-WHP

| | |
|---|---|
| Charron v. Sallyport Global Holdings, Inc. et al | Date Filed: 09/10/2012 |
| Assigned to: Judge William H. Pauley, III | Date Terminated: 12/31/2014 |
| Referred to: Magistrate Judge Frank Maas (Settlement) | Jury Demand: Plaintiff |
| Demand: $9,999,000 | Nature of Suit: 190 Contract: Other |
| Cause: 28:1332oc Diversity-Other Contract | Jurisdiction: Diversity |

**Plaintiff**

**Thomas W. Charron, Jr.**                      represented by **Athanasios Basdekis**
*Individually and as trustee of the*                          Bailey & Glasser, LLP
*Thomas W. Charron Jr. Grantor*                               2855 Cranberry Square
*Retained Annuity Trust dated July 8,*                        Morgantown, WV 26508
*2010*                                                        (304) 345-6555
                                                              Fax: (304) 342-1110
                                                              Email: tbasdekis@baileyglasser.com
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Brian A. Glasser**
                                                              Bailey & Glasser, LLP (WV)
                                                              209 Capitol Street
                                                              Charleston, WV 25301
                                                              (304)-345-6555
                                                              Fax: (304) 342-1110
                                                              Email: bglasser@baileyglasser.com
                                                              *PRO HAC VICE*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **James B. Perrine**
                                                              Bailey & Glasser, LLP
                                                              201 Monroe Street, Suite 2170
                                                              Montgomery, AL 36104
                                                              (334) 262-6485
                                                              Fax: (334) 262-0657
                                                              Email: jbperrine@baileyglasser.com
                                                              *PRO HAC VICE*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Kevin W. Barrett**
                                                              Bailey & Glasser LLP
                                                              209 Capitol Street
                                                              Charleston, WV 25301
                                                              (304)-345-6555
                                                              Fax: (304)-342-1110
                                                              Email: kbarrett@baileyglasser.com

*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Sallyport Global Holdings, Inc.**          represented by  **Brian P. Waagner**
Husch Blackwell LLP
750 17th Street N.W. Suite 900
Washington, DC 20006
(202)-378-2300
Fax: (202)-378-2318
Email:
brian.waagner@huschblackwell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin S. Antonipillai**
Arnold & Porter, L.L.P.
555 Twelfth Street, NW
Washington, DC 20004
(202) 942-5000
Fax: (202)-942-5999
Email: justin.antonipillai@aporter.com
*TERMINATED: 05/14/2013*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Claude P. Goddard , Jr.**
Husch Blacwell LLP
750 17th Street, N.W., Suite 900
Washington, DC 20006
(202)-378-2300
Fax: (202)-378-2318
Email:
claude.goddard@huschblackwell.com
*TERMINATED: 06/27/2013*

**Colin Anson Bradley Holmes**
Arnold & Porter
555 Twelth Street Nw
Washington, DC 20004
(202) 942-6282
Fax: (202) 942-5999
Email: colin.holmes@aporter.com
*TERMINATED: 05/14/2013*

**Daniel P. Jaffe**
Husch Blackwell Sanders, LLP (St.
Louis)
190 Carondelet Plaza

Case 15-256, Document 6, 02/11/2015, 1437190, Page9 of 98

Suite 600
St. Louis, MO 63105-3441
(314) 480-1500
Fax: (314)-480-1505
Email: dan.jaffe@huschblackwell.com
*ATTORNEY TO BE NOTICED*

**David Scott Flugman**
Kirkland & Ellis LLP (NYC)
601 Lexington Avenue
New York, NY 10022
(212) 446-6408
Fax: (212) 446-6460
Email: dflugman@kirkland.com
*ATTORNEY TO BE NOTICED*

**Elizabeth Godofsky Leavy**
Husch Blacwell LLP
750 17th Street, N.W., Suite 900
Washington, DC 20006
378-2414
Fax: 378-2419
Email:
elizabeth.leavy@huschblackwell.com
*ATTORNEY TO BE NOTICED*

**Jay Philip Lefkowitz**
Kirkland & Ellis LLP (NYC)
601 Lexington Avenue
New York, NY 10022
(212)-446-4970
Fax: (212)-446-4900
Email: lefkowitz@kirkland.com
*ATTORNEY TO BE NOTICED*

**Michael Gatje**
Husch Blacwell LLP
750 17th Street, N.W., Suite 900
Washington, DC 20006
(202) 378-2352
Fax: (202) 378-2319
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Mae Graves**
Husch Blackwell LLP
750 17th Street, N.W. #900
Washington, DC 20006
(202)-378-2358
Fax: (202)-378-2319

Email:
sarah.graves@huschblackwell.com
*TERMINATED: 06/27/2013*

**Thomas F Rath**
Husch Blacwell LLP
750 17th Street, N.W., Suite 900
Washington, DC 20006
(202) 378-2369
Fax: (202) 378-2319
Email:
thomas.rath@huschblackwell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JPD Private Trust Company, Ltd.**                    represented by **Brian P. Waagner**
*as Trustee of the GPD Charitable Trust*              (See above for address)
*dated December 7, 2010*                              *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Claude P. Goddard , Jr.**
                                                      (See above for address)
                                                      *TERMINATED: 06/27/2013*
                                                      *PRO HAC VICE*

                                                      **Daniel P. Jaffe**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **David Scott Flugman**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Elizabeth Godofsky Leavy**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Jay Philip Lefkowitz**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Michael Gatje**
                                                      (See above for address)
                                                      *PRO HAC VICE*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Omri E. Praiss**
                                                      Husch Blackwell LLP
                                                      190 Carondelet Plaza, Suite 600

Case 15-256, Document 6, 02/11/2015, 1437190, Page11 of 98

St. Louis, MO 63105
(314) 480-1829
Fax: (314) 480-1505
Email:
omri.praiss@huschblackwell.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Mae Graves**
Husch Blackwell LLP
750 17th Street, N.W. #900
Washington, DC 20006
(202)-378-2300
Fax: (202)-378-2318
Email:
sarah.graves@huschblackwell.com
*TERMINATED: 06/27/2013*
*PRO HAC VICE*

**Thomas F Rath**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gian Paul Deblasio**                 represented by **Brian P. Waagner**
*also known as*                        (See above for address)
John P. DeBlasio                       *LEAD ATTORNEY*
                                       *ATTORNEY TO BE NOTICED*

                                       **David Scott Flugman**
                                       (See above for address)
                                       *ATTORNEY TO BE NOTICED*

                                       **Elizabeth Godofsky Leavy**
                                       (See above for address)
                                       *ATTORNEY TO BE NOTICED*

                                       **Jay Philip Lefkowitz**
                                       (See above for address)
                                       *ATTORNEY TO BE NOTICED*

                                       **Michael Gatje**
                                       (See above for address)
                                       *PRO HAC VICE*
                                       *ATTORNEY TO BE NOTICED*

                                       **Thomas F Rath**
                                       (See above for address)
                                       *PRO HAC VICE*

Case 15-256, Document 6, 02/11/2015, 1437190, Page12 of 98

*ATTORNEY TO BE NOTICED*

**Defendant**

**John Doe**
*as trustee of the John Deblascio
Charitable Trust for World Peace and
Development*

**Defendant**

**Sallyport Global Services, Ltd.**                represented by    **Brian P. Waagner**
*as Trustee of The John Deblasio*                                  (See above for address)
*Charitable Trust for World Peace and*                             *LEAD ATTORNEY*
*Development*                                                      *ATTORNEY TO BE NOTICED*
*TERMINATED: 04/22/2013*

                                                                  **Justin S. Antonipillai**
                                                                  Arnold & Porter, L.L.P.
                                                                  555 Twelfth Street, NW
                                                                  Washington, DC 20004
                                                                  (202) 942-5066
                                                                  Fax: (202)-942-5999
                                                                  Email: justin.antonipillai@aporter.com
                                                                  *TERMINATED: 05/14/2013*
                                                                  *LEAD ATTORNEY*

                                                                  **Claude P. Goddard , Jr.**
                                                                  (See above for address)
                                                                  *TERMINATED: 06/27/2013*

                                                                  **Daniel P. Jaffe**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Sarah Mae Graves**
                                                                  (See above for address)
                                                                  *TERMINATED: 06/27/2013*

**Counter Claimant**

**JPD Private Trust Company, Ltd.**               represented by    **Brian P. Waagner**
*as Trustee of the GPD Charitable Trust*                           (See above for address)
*dated December 7, 2010*                                           *ATTORNEY TO BE NOTICED*

                                                                  **Claude P. Goddard , Jr.**
                                                                  (See above for address)
                                                                  *TERMINATED: 06/27/2013*

                                                                  **Daniel P. Jaffe**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Michael Gatje**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Omri E. Praiss**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Mae Graves**
(See above for address)
*TERMINATED: 06/27/2013*

**Thomas F Rath**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Sallyport Global Holdings, Inc.**        represented by **Brian P. Waagner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin S. Antonipillai**
(See above for address)
*TERMINATED: 05/14/2013*
*LEAD ATTORNEY*

**Claude P. Goddard , Jr.**
(See above for address)
*TERMINATED: 06/27/2013*

**Colin Anson Bradley Holmes**
(See above for address)
*TERMINATED: 05/14/2013*

**Daniel P. Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Gatje**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Mae Graves**
(See above for address)
*TERMINATED: 06/27/2013*

**Thomas F Rath**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Gian Paul Deblasio**       represented by **Brian P. Waagner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Gatje**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas F Rath**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Thomas W. Charron, Jr.**       represented by **Athanasios Basdekis**
*Individually and as trustee of the*     (See above for address)
*Thomas W. Charron Jr. Grantor*     *ATTORNEY TO BE NOTICED*
*Retained Annuity Trust dated July 8,*
*2010*                         **Brian A. Glasser**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James B. Perrine**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/10/2012 | 1 | COMPLAINT against Gian Paul Deblasio, JPD Private Trust Company, John Doe, Sallyport Global Holdings, Inc. (Filing Fee $ 350.00, Receipt Number 1048082)Document filed by Thomas W. Charron, Jr.(mro) (Additional attachment(s) added on 9/12/2012: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit) (mro). (Entered: 09/11/2012) |
| 09/10/2012 | | SUMMONS ISSUED as to Gian Paul Deblasio, JPD Private Trust Company, John Doe, Sallyport Global Holdings, Inc. (mro) (Entered: 09/11/2012) |
| 09/10/2012 | | Magistrate Judge Frank Maas is so designated. (mro) (Entered: 09/11/2012) |
| 09/10/2012 | | Case Designated ECF. (mro) (Entered: 09/11/2012) |

Case 15-256, Document 6, 02/11/2015, 1437190, Page15 of 98

| 09/20/2012 | 2 | AFFIDAVIT OF SERVICE. Sallyport Global Holdings, Inc. served on 9/11/2012, answer due 10/2/2012. Service was accepted by Scott Lascala, Process Agent. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 09/20/2012) |
| 09/20/2012 | 3 | ORDER FOR INITIAL PRETRIAL CONFERENCE: Initial Conference set for 12/14/2012 at 10:15 AM in Courtroom 11D, 500 Pearl Street, New York, NY 10007 before Judge William H. Pauley III, and as further set forth in this document. (Signed by Judge William H. Pauley, III on 9/20/2012) (cd) (Entered: 09/21/2012) |
| 09/28/2012 | 4 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent KS International LLC for Sallyport Global Holdings, Inc.. Document filed by Sallyport Global Holdings, Inc..(Boccanfuso, Anthony) (Entered: 09/28/2012) |
| 10/02/2012 | 5 | ENDORSED LETTER addressed to Judge William H. Pauley from Justin S. Antonipillai dated 9/28/2012 re: Defense counsel writes to request a 30-day extension through and including November 1, 2012, to answer, move, or other response to the Complaint. ENDORSEMENT: Application granted. So Ordered. Sallyport Global Holdings, Inc. answer due 11/1/2012. (Signed by Judge William H. Pauley, III on 10/2/2012) (ago) Modified on 10/5/2012 (ago). (Entered: 10/03/2012) |
| 10/09/2012 | 6 | NOTICE OF APPEARANCE by Daniel P. Jaffe on behalf of JPD Private Trust Company (Jaffe, Daniel) (Entered: 10/09/2012) |
| 10/11/2012 | 7 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by JPD Private Trust Company.(Jaffe, Daniel) (Entered: 10/11/2012) |
| 10/12/2012 | 8 | ENDORSED LETTER addressed to Judge William H. Pauley from Daniel P. Jaffe dated 10/09/2012 re: We have agreed with counsel for Plaintiff Thomas W. Charron Jr. to accept service of the Complaint and, subject to the approval of the Court, to extend the deadline to answer or otherwise respond to the Complaint through and including November 19, 2012. ENDORSEMENT: Application Granted. SO ORDERED., JPD Private Trust Company answer due 11/19/2012; Sallyport Global Holdings, Inc. answer due 11/19/2012. (Signed by Judge William H. Pauley, III on 10/11/2012) (ama) (Entered: 10/12/2012) |
| 10/24/2012 | 9 | MOTION for Brian P. Waagner to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-7933980. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by JPD Private Trust Company. (Attachments: # 1 Certificates of Good Standing, # 2 Text of Proposed Order)(Waagner, Brian) (Entered: 10/24/2012) |
| 10/24/2012 | 10 | MOTION for Claude P. Goddard, Jr. to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-7934026. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by JPD Private Trust Company. (Attachments: # 1 Certificates of Good Standing, # 2 Text of Proposed Order)(Goddard, Claude) (Entered: 10/24/2012) |

| | | |
|---|---|---|
| 10/24/2012 | 11 | MOTION for Omri E. Praiss to Appear Pro Hac Vice. Filing fee $ 200.00. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by JPD Private Trust Company. (Attachments: # 1 Certificates of Good Standing, # 2 Text of Proposed Order)(Praiss, Omri) (Entered: 10/24/2012) |
| 10/24/2012 | | Pro Hac Vice Fee Payment: for 11 MOTION for Omri E. Praiss to Appear Pro Hac Vice. Filing fee $ 200.00. **Motion and supporting papers to be reviewed by Clerk's Office staff.**. Filing fee $ 200.00, receipt number 0208-7934188.(Praiss, Omri) (Entered: 10/24/2012) |
| 10/24/2012 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 10 MOTION for Claude P. Goddard, Jr. to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-7934026. Motion and supporting papers to be reviewed by Clerk's Office staff., 9 MOTION for Brian P. Waagner to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-7933980. Motion and supporting papers to be reviewed by Clerk's Office staff., 11 MOTION for Omri E. Praiss to Appear Pro Hac Vice. Filing fee $ 200.00. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (pgu)** (Entered: 10/24/2012) |
| 11/09/2012 | 12 | ORDER FOR ADMISSION PRO HAC VICE granting 9 Motion for Brian P. Waagner to Appear Pro Hac Vice. (Signed by Judge William H. Pauley, III on 11/8/2012) (rjm) (Entered: 11/09/2012) |
| 11/09/2012 | 13 | ORDER FOR ADMISSION PRO HAC VICE granting 11 Motion for Omri E. Praiss to Appear Pro Hac Vice. (Signed by Judge William H. Pauley, III on 11/8/2012) (rjm) (Entered: 11/09/2012) |
| 11/09/2012 | 14 | ORDER FOR ADMISSION PRO HAC VICE granting 10 Motion for Claude P. Goddard, Jr. to Appear Pro Hac Vice. (Signed by Judge William H. Pauley, III on 11/8/2012) (rjm) (Entered: 11/09/2012) |
| 11/19/2012 | 15 | CERTIFICATE of Counsel by Brian P. Waagner on behalf of JPD Private Trust Company. (Attachments: # 1 Exhibit A)(Waagner, Brian) (Entered: 11/19/2012) |
| 11/19/2012 | 17 | ENDORSED LETTER addressed to Judge William H. Pauley, III, from Justin S. Antonipillai, dated 11/19/2012, re: Undersigned counsel for Defendant Sallyport Global Holdings, Inc. ("SGH") anticipates filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and respectfully requests a pre-motion conference pursuant to your Individual Practices. ENDORSEMENT: Application granted. This Court will address the proposed motion at the initial conference on December 14, 2012. (Signed by Judge William H. Pauley, III on 11/30/2012) (ja) (ja). (Entered: 12/03/2012) |
| 12/03/2012 | 16 | ENDORSED LETTER addressed to Judge William H. Pauley, from Brian P. Waagner, dated 11/19/2012, re: summarizing the grounds for the motion to dismiss and requests a pre-motion conference in accordance with the procedure set forth in your Individual Practices. Finally, Count IX (civil conspiracy) should be dismissed. ENDORSEMENT: Application granted. |

| | | |
|---|---|---|
| | | This Court will address the proposed motion at the initial conference on December 14, 2012. (Signed by Judge William H. Pauley, III on 11/30/2012) (ja) (Entered: 12/03/2012) |
| 12/05/2012 | 18 | MOTION for James B. Perrine to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8035781. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Thomas W. Charron, Jr. (Attachments: # 1 Certificates of Good Standing, # 2 Text of Proposed Order)(Perrine, James) (Entered: 12/05/2012) |
| 12/05/2012 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 18 MOTION for James B. Perrine to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8035781. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 12/05/2012) |
| 12/06/2012 | 19 | ORDER FOR ADMISSION PRO HAC VICE granting 18 Motion for James B. Perrine to Appear Pro Hac Vice. (Signed by Judge William H. Pauley, III on 12/5/2012) (djc) (Entered: 12/06/2012) |
| 12/06/2012 | 20 | MOTION for Justin S. Antonipillai to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8040416. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Sallyport Global Holdings, Inc.. (Attachments: # 1 Exhibit Certificates of Good Standing, # 2 Text of Proposed Order)(Antonipillai, Justin) (Entered: 12/06/2012) |
| 12/06/2012 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 20 MOTION for Justin S. Antonipillai to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8040416. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 12/06/2012) |
| 12/06/2012 | 21 | MOTION for Colin A. B. Holmes to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8041072. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Sallyport Global Holdings, Inc.. (Attachments: # 1 Exhibit Certificates of Good Standing, # 2 Text of Proposed Order)(Holmes, Colin) (Entered: 12/06/2012) |
| 12/07/2012 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 21 MOTION for Colin A. B. Holmes to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8041072. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 12/07/2012) |
| 12/07/2012 | 22 | RULE 26(f) DISCOVERY PLAN REPORT.Document filed by Thomas W. Charron, Jr, JPD Private Trust Company, Sallyport Global Holdings, Inc.. (Waagner, Brian) (Entered: 12/07/2012) |
| 12/11/2012 | 23 | ORDER FOR ADMISSION PRO HAC VICE granting 21 Motion for Colin A. B. Holmes to Appear Pro Hac Vice. (Signed by Judge William H. Pauley, |

| | | III on 12/10/2012) (ja) (Entered: 12/11/2012) |
|---|---|---|
| 12/13/2012 | 24 | RULE 26 DISCLOSURE.Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 12/13/2012) |
| 12/14/2012 | | Minute Entry for proceedings held before Judge William H. Pauley, III: Initial Pretrial Conference held on 12/14/2012. (mro) (Entered: 01/15/2013) |
| 12/17/2012 | 25 | MOTION for Brian A. Glasser to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8068422. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Thomas W. Charron, Jr. (Attachments: # 1 Certificate of Good Standing, # 2 Text of Proposed Order)(Glasser, Brian) (Entered: 12/17/2012) |
| 12/17/2012 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 25 MOTION for Brian A. Glasser to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8068422. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 12/17/2012) |
| 12/19/2012 | 26 | ORDER granting 25 Motion for Brian A. Glasser to Appear Pro Hac Vice. The motion of Brian A. Glasser for admission to practice Pro Hac Vice in the above captioned action is granted. Applicant having requested admission Pro Hac Vice to appear for all purposes as counsel for Thomas W. Charron, Jr. Individually and as Trustee of the Thomas W. Charron Jr. Grantor Retained Annuity Trust Dated July 8, 2010 in the above-entitled action; IT IS HEREBY ORDERED that Applicant is admitted to practice Pro Hac Vice in the above captioned case in the United States District Court for the Southern District of New York. All attorneys appearing before this Court are subject to the Local Rules of this Court, including the Rules governing discipline of attorneys(Signed by Judge William H. Pauley, III on 12/18/2012) (ago) (Main Document 26 replaced on 12/19/2012) (tro). (Entered: 12/19/2012) |
| 12/19/2012 | 27 | SCHEDULING ORDER: The parties having appeared for a conference on December 14, 2012, the following schedule is established: As set forth herein. SO ORDERED. Amended Pleadings due by 2/15/2013. Motions due by 3/1/2013. Responses due by 3/21/2013 Replies due by 3/29/2013. Fact Discovery due by 6/28/2013. Expert Discovery due by 9/30/2013. Oral Argument set for 4/19/2013 at 11:00 AM before Judge William H. Pauley III. Final Pretrial Conference set for 11/15/2013 at 11:00 AM before Judge William H. Pauley III. Pretrial Order due by 10/31/2013. (Signed by Judge William H. Pauley, III on 12/18/2012) Copies Mailed By Chambers. (ama) (Entered: 12/19/2012) |
| 12/19/2012 | 28 | ORDER FOR ADMISSION PRO HAC VICE on granting 20 Motion for Justin Antonipillai to Appear Pro Hac Vice. The Motion of Justin Antonipillai for admission to practice Pro Hac Vice in the above-captioned action is granted. (Signed by Judge William H. Pauley, III on 12/18/2012) (ama) (Entered: 12/19/2012) |
| 12/21/2012 | 29 | REQUEST for Production of Documents.Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 12/21/2012) |

| 12/28/2012 | 30 | SUBPOENA ISSUED for Alcentra NY, LLC on 01/15/2013 at 5:06 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 12/28/2012) |
|---|---|---|
| 12/28/2012 | 31 | SUBPOENA ISSUED for Kohlberg Capital Corporation on 1/15/2013 at 5:06 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 12/28/2012) |
| 01/10/2013 | 32 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** SUBPOENA ISSUED for Trici M. Pellegrini on 1/22/2013 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) Modified on 1/11/2013 (ka). (Entered: 01/10/2013) |
| 01/10/2013 | 33 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** SUBPOENA ISSUED for Trici M. Pellegrini on 1/22/2013 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) Modified on 1/11/2013 (ka). (Entered: 01/10/2013) |
| 01/10/2013 | 34 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** SUBPOENA ISSUED for Trici M. Pellegrini on 1/22/2013 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) Modified on 1/11/2013 (ka). (Entered: 01/10/2013) |
| 01/10/2013 | 35 | FIRST SET OF INTERROGATORIES to Defendants.Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 01/10/2013) |
| 01/11/2013 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Athanasios Basdekis to RE-FILE Document 32 Subpoena Issued. ERROR(S): Incorrect Deponent name. Correct name should be Gian P. DeBlasic. (ka)** (Entered: 01/11/2013) |
| 01/11/2013 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Athanasios Basdekis to RE-FILE Document 33 Subpoena Issued. ERROR(S): Incorrect Deponent name. Correct name should be Sabrina Marie Wadhams. (ka)** (Entered: 01/11/2013) |
| 01/11/2013 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Athanasios Basdekis to RE-FILE Document 34 Subpoena Issued. ERROR(S): Incorrect Deponent name. Correct name should be Mark Henderson. (ka)** (Entered: 01/11/2013) |
| 01/11/2013 | 36 | SUBPOENA ISSUED for Tricia M. Pellegrini on 1/22/2013 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 01/11/2013) |
| 01/15/2013 | 37 | ENDORSED LETTER addressed to Judge William H. Pauley III from Athanasios Basdekis dated 1/10/2013 re: Plaintiff respectfully requests a sixty (60) day extension for service of the Complaint on Mr. DeBlasio. Plaintiff appreciates your consideration of this matter. ENDORSEMENT: Application Granted. This Court will grant no further extensions. SO ORDERED. (Signed |

| | | by Judge William H. Pauley, III on 1/15/2013) (ama) (Entered: 01/15/2013) |
|---|---|---|
| 02/04/2013 | 38 | PROTECTIVE ORDER...regarding procedures to be followed that shall govern the handling of confidential material... (Signed by Judge William H. Pauley, III on 2/4/2013) (ft) (Entered: 02/04/2013) |
| 02/07/2013 | 39 | MOTION for Sarah M. Graves to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8216621. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by JPD Private Trust Company. (Attachments: # 1 Certificates of Good Standing, # 2 Text of Proposed Order)(Graves, Sarah) (Entered: 02/07/2013) |
| 02/07/2013 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 39 MOTION for Sarah M. Graves to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8216621. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 02/07/2013) |
| 02/21/2013 | 40 | ORDER FOR ADMISSION PRO HAC VICE granting 39 Motion for Sarah M. Graves to Appear Pro Hac Vice. (Signed by Judge William H. Pauley, III on 2/20/2013) (rjm) (Entered: 02/21/2013) |
| 02/25/2013 | 41 | Letter addressed to Judge William H. Pauley, III from Brian P. Waagner dated 1/4/2013 re: Pursuant to the Court's instruction during the December 14, 2012 initial pretrial conference, counsel hereby submit this joint letter detailing the status of negotiations regarding entry of a protective order to govern production and treatment of documents in the above-referenced case. (rjm) (Entered: 02/26/2013) |
| 02/25/2013 | 42 | Letter addressed to Judge William H. Pauley from Brian P. Waagner dated 1/16/2013 re: Counsel writes as a follow up to our joint letter dated January 4, 2013, the parties attached revised proposed protective orders for your review and consideration. The proposed protective orders have been revised to include the proper caption, proper rule references, and reference to your practice regarding leave of Court for filing under seal. In addition, Plaintiff has eliminated certain language to reflect that this is no longer a stipulated protective order, but is instead one being entered by the Court. The revised protective order proposed by Defendant Sallyport Global Holdings, Inc. and JPD Private Trust Company, LTD is attached as Exhibit A (with redline provided as Exhibit B).(js) (Entered: 02/26/2013) |
| 02/28/2013 | 43 | SUBPOENA ISSUED for Glenn Corliss on 03/28/2013 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 02/28/2013) |
| 03/01/2013 | 45 | FIRST AMENDED COMPLAINT amending 1 Complaint, against Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc., Sallyport Global Services, Ltd. Document filed by Thomas W. Charron, Jr. Related document: 1 Complaint, filed by Thomas W. Charron, Jr. (mro) (Additional attachment(s) added on 3/4/2013: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # |

Case 15-256, Document 6, 02/11/2015, 1437190, Page21 of 98

| | | |
|---|---|---|
| | | 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Exhibit, # 28 Exhibit, # 29 Exhibit, # 30 Exhibit, # 31 Exhibit, # 32 Exhibit) (mro). (Entered: 03/04/2013) |
| 03/04/2013 | 44 | SCHEDULING ORDER: Plaintiff shall serve and file his amended complaint by by 3/1/2013. Defendants Motion to Dismiss due by 3/15/2013. Responses due by 4/4/2013. Replies due by 4/12/2013. Oral Argument set for 4/19/2013 at 11:00 AM before Judge William H. Pauley III. Fact Discovery due by 7/12/2013. Expert Discovery due by 10/14/2013. Joint Pretrial Order due by 11/14/2013. Final Pretrial Conference set for 11/22/2013 at 10:00 AM before Judge William H. Pauley III. (Signed by Judge William H. Pauley, III on 3/4/2013) (tro) (Entered: 03/04/2013) |
| 03/11/2013 | 46 | SUBPOENA ISSUED for McGladrey LLP on 03/21/2013 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 03/11/2013) |
| 03/15/2013 | 47 | ENDORSED LETTER addressed to Judge William H. Pauley, III from Anthony Boccanfuso dated 3/13/2013 re: SGH and SGS request a one business-day extension such that SGH and SGS shall have until Monday, March 18, 2013, to file a motion to dismiss. ENDORSEMENT: Application granted. So ordered. (Motions due by 3/18/2013.) (Signed by Judge William H. Pauley, III on 3/15/2013). (rjm) (Entered: 03/15/2013) |
| 03/15/2013 | 48 | MOTION to Dismiss. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd.. Responses due by 4/4/2013 Return Date set for 4/19/2013 at 11:00 AM.(Waagner, Brian) (Entered: 03/15/2013) |
| 03/15/2013 | 49 | MEMORANDUM OF LAW in Support re: 48 MOTION to Dismiss.. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd.. (Attachments: # 1 Exhibit A)(Waagner, Brian) (Entered: 03/15/2013) |
| 03/18/2013 | 50 | SUBPOENA ISSUED for PNC Bank on 04/15/2013 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 03/18/2013) |
| 03/18/2013 | 51 | SUBPOENA ISSUED for The Goldman, Sachs & Co. L.L.C. on 4/15/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 03/18/2013) |
| 03/18/2013 | 52 | SUBPOENA ISSUED for William Blair Company, L.L.C. on 4/15/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 03/18/2013) |
| 03/18/2013 | 53 | MOTION to Dismiss First Amended Complaint. Document filed by Sallyport Global Holdings, Inc., Sallyport Global Services, Ltd.. Responses due by 4/4/2013 Return Date set for 4/19/2013 at 11:00 AM.(Antonipillai, Justin) (Entered: 03/18/2013) |
| 03/18/2013 | 54 | MEMORANDUM OF LAW in Support re: 53 MOTION to Dismiss First Amended Complaint.. Document filed by Sallyport Global Holdings, Inc., Sallyport Global Services, Ltd.. (Antonipillai, Justin) (Entered: 03/18/2013) |
| 03/21/2013 | 55 | AFFIDAVIT OF SERVICE of Summons and Amended Complaint,,,. |

| | | |
|---|---|---|
| | | Sallyport Global Services, Ltd. served on 3/11/2013, answer due 4/1/2013. Service was accepted by Justin Antonipillai. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 03/21/2013) |
| 03/21/2013 | 56 | AFFIDAVIT OF SERVICE of Summons and Amended Complaint,,,. Gian Paul Deblasio served on 3/6/2013, answer due 3/27/2013. Service was accepted by Gian Paul DeBlasio. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 03/21/2013) |
| 03/25/2013 | 57 | SUBPOENA ISSUED for Alcentra NY LLC on 4/22/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 03/25/2013) |
| 03/25/2013 | 58 | SUBPOENA ISSUED for Bank of America, N.A. on 4/22/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 03/25/2013) |
| 03/25/2013 | 59 | SUBPOENA ISSUED for Paul J. Echausse, BNY Mellon-Alcentra Mezzanine III on 4/22/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 03/25/2013) |
| 03/25/2013 | 60 | SUBPOENA ISSUED for Paul J. Echausse, BNY Mezzanine Partners, L.P. on 4/22/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 03/25/2013) |
| 03/25/2013 | 61 | SUBPOENA ISSUED for Ernst & Young, LLP on 4/22/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 03/25/2013) |
| 03/25/2013 | 62 | SUBPOENA ISSUED for KCAP Financial, Inc. on 4/22/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 03/25/2013) |
| 03/25/2013 | 63 | SUBPOENA ISSUED for Nathan Harnetiaux, United Insurance Company of America on 4/22/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 03/25/2013) |
| 04/04/2013 | 64 | MEMORANDUM OF LAW in Opposition re: 48 MOTION to Dismiss.. Document filed by Thomas W. Charron, Jr. (Attachments: # 1 Exhibit 1) (Basdekis, Athanasios) (Entered: 04/04/2013) |
| 04/04/2013 | 65 | MEMORANDUM OF LAW in Opposition re: 53 MOTION to Dismiss *First Amended Complaint*.. Document filed by Thomas W. Charron, Jr. (Attachments: # 1 Exhibit 1 Charron Affidavit, # 2 Exhibit A to Charron Affidavit, # 3 Exhibit B to Charron Affidavit, # 4 Exhibit C to Charron Affidavit, # 5 Exhibit D to Charron Affidavit, # 6 Exhibit E-part 1 to Charron Affidavit, # 7 Exhibit E-part 2 to Charron Affidavit, # 8 Exhibit E-part 3 to Charron Affidavit, # 9 Exhibit E-part 4 to Charron Affidavit, # 10 Exhibit E-part 5 to Charron Affidavit, # 11 Exhibit F to Charron Affidavit, # 12 Exhibit G-part 1 to Charron Affidavit, # 13 Exhibit G-part 2 to Charron Affidavit, # 14 Exhibit G-part 3 to Charron Affidavit, # 15 Exhibit G-part 4 to Charron Affidavit, # 16 Exhibit G-part 5 to Charron Affidavit, # 17 Exhibit G-part 6 to Charron Affidavit, # 18 Exhibit H to Charron Affidavit, # 19 Exhibit I to |

| | | |
|---|---|---|
| | | Charron Affidavit, # 20 Exhibit J to Charron Affidavit, # 21 Exhibit K to Charron Affidavit, # 22 Exhibit L to Charron Affidavit, # 23 Exhibit M to Charron Affidavit, # 24 Exhibit 2)(Basdekis, Athanasios) (Entered: 04/04/2013) |
| 04/12/2013 | 66 | NOTICE OF APPEARANCE by Brian P. Waagner on behalf of Sallyport Global Holdings, Inc., Sallyport Global Services, Ltd. (Waagner, Brian) (Entered: 04/12/2013) |
| 04/12/2013 | 67 | NOTICE OF APPEARANCE by Claude P. Goddard, Jr on behalf of Sallyport Global Holdings, Inc., Sallyport Global Services, Ltd. (Goddard, Claude) (Entered: 04/12/2013) |
| 04/12/2013 | 68 | NOTICE OF APPEARANCE by Sarah Mae Graves on behalf of Sallyport Global Holdings, Inc., Sallyport Global Services, Ltd. (Graves, Sarah) (Entered: 04/12/2013) |
| 04/12/2013 | 69 | NOTICE OF APPEARANCE by Daniel P. Jaffe on behalf of Sallyport Global Holdings, Inc., Sallyport Global Services, Ltd. (Jaffe, Daniel) (Entered: 04/12/2013) |
| 04/12/2013 | 70 | NOTICE of Substitution of Attorney. Old Attorney: Justin S. Antonipillai, New Attorney: Brian P. Waagner, Address: Husch Blackwell LLP, 750 17th Street NW #900, Washington, DC, United States 20006, 2023782300. Document filed by Sallyport Global Holdings, Inc., Sallyport Global Services, Ltd.. (Attachments: # 1 Exhibit Declaration of Brian Waagner) (Waagner, Brian) (Entered: 04/12/2013) |
| 04/12/2013 | 71 | REPLY MEMORANDUM OF LAW in Support re: 53 MOTION to Dismiss *First Amended Complaint*.. Document filed by Sallyport Global Holdings, Inc., Sallyport Global Services, Ltd.. (Waagner, Brian) (Entered: 04/12/2013) |
| 04/12/2013 | 72 | REPLY MEMORANDUM OF LAW in Support re: 48 MOTION to Dismiss.. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd.. (Waagner, Brian) (Entered: 04/12/2013) |
| 04/19/2013 | | Minute Entry for proceedings held before Judge William H. Pauley, III: Oral Argument held on 4/19/2013 re: 48 MOTION to Dismiss. filed by JPD Private Trust Company, Ltd., Gian Paul Deblasio, 53 MOTION to Dismiss *First Amended Complaint*. filed by Sallyport Global Services, Ltd., Sallyport Global Holdings, Inc. (sc) (Entered: 07/09/2013) |
| 04/22/2013 | 73 | ORDER. For the reasons stated on the record in open court on April 19, 2013, Defendants' motions to dismiss are granted in part and denied in part. All claims against Defendant Sallyport Global Services, Ltd. are dismissed for lack of personal jurisdiction. Plaintiff's breach of contract claims regarding the alleged First and Second Windfall Sales are dismissed, as are his claims for tortious interference with contractual relations, fraud, constructive fraud, civil conspiracy, and unjust enrichment. Defendants' motions to dismiss Plaintiff's breach of contract claims regarding the alleged Third Windfall Sale (the "Kaseman Transaction") are denied. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 48 and 53. Granting in part and denying in part 48 Motion to Dismiss; Granting in part and denying in part 53 |

|  |  | Motion to Dismiss. (Signed by Judge William H. Pauley, III on 4/19/2013) (rjm) (Entered: 04/22/2013) |
|---|---|---|
| 05/02/2013 | 74 | TRANSCRIPT of Proceedings re: ARGUMENT held on 4/19/2013 before Judge William H. Pauley, III. Court Reporter/Transcriber: Sonya Ketter Huggins, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/28/2013. Redacted Transcript Deadline set for 6/6/2013. Release of Transcript Restriction set for 8/5/2013.(Rodriguez, Somari) (Entered: 05/02/2013) |
| 05/02/2013 | 75 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a ARGUMENT proceeding held on 4/19/13 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court an Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(Rodriguez, Somari) (Entered: 05/02/2013) |
| 05/02/2013 | 76 | SUBPOENA ISSUED for The McLean Group, LLC on May 23, 2013 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/02/2013) |
| 05/03/2013 | 77 | ANSWER to 45 Amended Complaint,,,,. COUNTERCLAIM against Thomas W. Charron, Jr. Document filed by JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc., Gian Paul Deblasio. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Waagner, Brian) (Entered: 05/03/2013) |
| 05/03/2013 | 78 | SUBPOENA ISSUED for Brian Arsenault on 05/28/2013 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 79 | SUBPOENA ISSUED for Nicholas Campbell on 05/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 80 | SUBPOENA ISSUED for Thomas Campbell on 05/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 81 | SUBPOENA ISSUED for Gail Dady on 05/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 82 | SUBPOENA ISSUED for DC Capital Partners on 05/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 83 | SUBPOENA ISSUED for DeBlasio and DeBlasio Associates on 5/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 84 | SUBPOENA ISSUED for DeBlasio Group on 5/28/13 at 1:00 p.m..Document |

| | | filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
|---|---|---|
| 05/03/2013 | 85 | SUBPOENA ISSUED for Franco DeBlasio on 05/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 86 | SUBPOENA ISSUED for Pasquale DeBlasio on 5/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 87 | SUBPOENA ISSUED for Pasquale DeBlasio as Trustee of the John P DeBlasio Trust on 05/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 88 | SUBPOENA ISSUED for Robert Tony Grimes on 05/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 89 | SUBPOENA ISSUED for Nick Gross on 05/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 90 | SUBPOENA ISSUED for Steve Hartsuff on 05/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 91 | SUBPOENA ISSUED for John P. DeBlasio as Trustee of the John P. DeBlasio Charitable Trust on 05/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 92 | SUBPOENA ISSUED for Kaseman, LLC on 05/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 93 | SUBPOENA ISSUED for Douglas T. Lake on 05/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 94 | SUBPOENA ISSUED for Sallyport Global Services Ltd. on 05/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 95 | SUBPOENA ISSUED for Sallyport Global, LLC on 05/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 96 | SUBPOENA ISSUED for Sallyport Holdings LLC on 05/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 97 | SUBPOENA ISSUED for Winfried Scheel on 05/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| 05/03/2013 | 98 | SUBPOENA ISSUED for The Spectrum Group LLC on 05/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
| | | |

| 05/03/2013 | 99 | SUBPOENA ISSUED for Robert F. Toole on 05/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/03/2013) |
|---|---|---|
| 05/14/2013 | 100 | STIPULATION AND CONSENT FOR SUBSTITUTION OF COUNSEL. IT IS HEREBY STIPULATED, CONSENTED, AND AGREED that Husch Blackwell LLP may be substituted in the place and stead of Arnold & Porter LLP as the attorneys of record for Defendants Sallyport Global Holdings, Inc. and Sallyport Global Services, Ltd., as Trustee of the John DeBlasio Charitable Trust for World Peace and Development, in the above-captioned action. Attorney Justin S. Antonipillai and Colin Anson Bradley Holmes terminated. (Signed by Judge William H. Pauley, III on 5/14/2013). (rjm) (Entered: 05/15/2013) |
| 05/22/2013 | 101 | SUBPOENA ISSUED for Branch Banking and Trust Company on 06/14/13 at 10:00 a.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/22/2013) |
| 05/22/2013 | 102 | SUBPOENA ISSUED for DC Capital Partners Investments on 06/14/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/22/2013) |
| 05/22/2013 | 103 | SUBPOENA ISSUED for JP Morgan Chase on 06/14/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/22/2013) |
| 05/22/2013 | 104 | SUBPOENA ISSUED for Solar Capital on 06/14/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/22/2013) |
| 05/22/2013 | 105 | SUBPOENA ISSUED for KS International Equity LLC on 6/14/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/22/2013) |
| 05/22/2013 | 106 | SUBPOENA ISSUED for The Spectrum Group Members LLC on 06/14/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/22/2013) |
| 05/23/2013 | 107 | SUBPOENA ISSUED for DC Capital Partners Investments, LLC on 06/14/2013 at 1:00 p.m..Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 05/23/2013) |
| 05/24/2013 | 108 | ORDER. For the reasons stated on the record on May 24, 2013, Plaintiff may proceed with enforcement of subpoenas issued to the following entities: Bank of America N.A., Alcentra NY LLC, KCAP Financial Inc., United Insurance Company of America, BNY Mellon, BNY Mezzanine Partners L.P., Ernst & Young LLP, McLean Group LLC, and Spectrum Group LLC. Plaintiff will clarify and narrow the scope of its subpoenas, limiting its requests to documents concerning the transaction at issue in this action. (Signed by Judge William H. Pauley, III on 5/24/2013). (rjm) (Entered: 05/28/2013) |
| 05/28/2013 | 109 | ORDER. The parties have presented a discovery dispute to the Court concerning Defendants' assertion of attorney-client privilege over certain communications between the law firm of Cohen & Grigsby and Defendant |

| | | |
|---|---|---|
| | | Sallyport Global Holding's accounting consultants, The DeBlasio Group, DeBlasio & DeBlasio Associates, Pasquale DeBlasio, and Franco DeBlasio. The parties agree Pennsylvania law applies. Under Pennsylvania law, "[t]he attorney-client privilege is not waived where a client allows disclosure to an agent assisting the attorney in giving legal advice to the client." Commonwealth v. Noll, 662 A.2d 1123, 1126 (Pa. Super. Ct. 1995) (citing In re Grand Jury Matter, 147 F.R.D. 82, 84 (E.D. Pa. 1992)). "This privilege protects those disclosures that are necessary to obtain informed legal advice which might not have been made absent the privilege. This privilege only applies where the client's ultimate goal is legal advice." Noll, 662 A.2d at 1126 (internal citation omitted). Plaintiff argues the privilege is inapplicable because unlike the facts in Noll, the accounting consultants here were retained by the Defendants and not their lawyers. However, the touchstone of the privilege is the purpose of the communications. What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer. If what is sought is not legal advice but only accounting service, or if the advice sought is the accountant's rather than the lawyer's, no privilege exists. In re Grand Jury Matter, 147 F.R.D. at 85 (quoting United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961)). The fact that the expert in Noll was retained by the attorney for the purpose of assisting with legal advice was relevant because it made it simple to conclude that all communications between the expert and the attorney were privileged. Noll, 662 A.2d at 608. But this Court here will have to be more discerning. Defendants may withhold as privileged only those communications from their accounting consultants that were requested by Cohen & Grigsby on specific issues for the purpose of providing legal advice to Defendants. Any other communications, including those seeking accounting advice, are not privileged and must be produced. (Signed by Judge William H. Pauley, III on 5/28/2013). (rjm) (Entered: 05/29/2013) |
| 05/29/2013 | 110 | SUBPOENA ISSUED for KS International, LLC on 06/21/2013 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 05/29/2013) |
| 06/03/2013 | 111 | ENDORSED LETTER addressed to Judge William H. Pauley, III from Thanos Basdekis dated 5/24/2013 re: Thomas W. Charron Jr. ("Charron"), Individually and as Trustee of the Thomas W. Charron Jr. Grantor Retained Annuity Trust Dated July 8, 2010, submits this letter expressing Mr. Charron's intent to file a motion to dismiss Defendants' counterclaims. ENDORSEMENT: The Court will hold a pre-motion conference June 10, 2013 at 10:30 a.m. So ordered. (Pre-Motion Conference set for 6/10/2013 at 10:30 AM before Judge William H. Pauley III.) (Signed by Judge William H. Pauley, III on 6/3/2013). (rjm) (Entered: 06/03/2013) |
| 06/03/2013 | 112 | SUBPOENA ISSUED for Arkel International, L.L.C. on 6/25/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/03/2013) |
| 06/03/2013 | 113 | SUBPOENA ISSUED for George Knost on 6/25/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/03/2013) |
| 06/05/2013 | 114 | NOTICE of Stipulation Regarding Non-Waiver Clawback and Production of |

Case 15-256, Document 6, 02/11/2015, 1437190, Page28 of 98

| | | Electronically Stored Information. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Waagner, Brian) (Entered: 06/05/2013) |
|---|---|---|
| 06/05/2013 | 115 | SUBPOENA ISSUED for Strategic Intelligence Group, LLC on 6/26/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/05/2013) |
| 06/05/2013 | 116 | **FILING ERROR - DEFICIENT DOCKET ENTRY (SEE DOCUMENT #118)** - SUBPOENA ISSUED for Gladiator HoldCo LLC on 6/26/13 at 1:00 p.m..Document filed by Gian Paul Deblasio.(Basdekis, Athanasios) Modified on 6/13/2013 (ldi). (Entered: 06/05/2013) |
| 06/05/2013 | 117 | SUBPOENA ISSUED for Pasquale DeBlasio on 6/26/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/05/2013) |
| 06/06/2013 | 118 | SUBPOENA ISSUED for Gladiator HoldCo LLC on 6/26/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/06/2013) |
| 06/06/2013 | 119 | ENDORSED LETTER addressed to Judge William H. Pauley III from Brian P. Waagner dated 5/31/13 re: Counsel for Sallyport Global Holdings, Inc. ("SGH") submits this letter opposing Plaintiff Thomas W. Charron's ("Charron's") letter of May 24, 2013 seeking the Court's permission to file a motion to dismiss SGH's counterclaims. ENDORSEMENT: The conference scheduled for June 10, 2013 at 10:30 a.m. will be teleconference. The parties are directed to provide the Court with dial-in information. (Signed by Judge William H. Pauley, III on 6/5/2013) (mro) (Entered: 06/06/2013) |
| 06/06/2013 | 120 | SUBPOENA ISSUED for Branch Banking and Trust Company on 06/26/13 at 10:00 a.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/06/2013) |
| 06/07/2013 | 121 | SUBPOENA ISSUED for Bank of America, N.A. on 6/28/13 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/07/2013) |
| 06/10/2013 | 122 | STIPULATION REGARDING NON-WAIVER CLAWBACK AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION. Plaintiff Thomas W. Charron Jr., Individually and as Trustee of the Thomas W. Charron Grantor Retained Annuity Trust Dated July 8, 2010 ("Plaintiff"), and Defendants Sallyport Global Holdings, Inc. ("SGH"), John DeBlasio, and JPD Private Trust Company, Ltd, as Trustee of The GPD Charitable Trust dated December 7, 2010 (collectively "Defendants"), by and through undersigned counsel, enter into this Stipulation Regarding Non-Waiver Clawback and Production of Electronically Stored Information, regarding: A. Plaintiff's Third and Fifth Sets of Discovery Requests; B. DC CAPITAL PARTNERS/KASEMAN ESI; C. CLAWBACK OF INADVERTENTLY PRODUCED DOCUMENTS, and as further set forth herein. (Signed by Judge William H. Pauley, III on 6/7/2013). (rjm) (Entered: 06/10/2013) |
| 06/13/2013 | 123 | TRANSCRIPT of Proceedings re: CONFERENCE held on 5/24/2013 before |

|  |  | Judge William H. Pauley, III. Court Reporter/Transcriber: Andrew Walker, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/11/2013. Redacted Transcript Deadline set for 7/18/2013. Release of Transcript Restriction set for 9/16/2013.(Rodriguez, Somari) (Entered: 06/13/2013) |
|---|---|---|
| 06/13/2013 | 124 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 5/24/13 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(Rodriguez, Somari) (Entered: 06/13/2013) |
| 06/13/2013 | 125 | SUBPOENA ISSUED for Sallyport Global Services, Ltd. on 06/27/2013 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/13/2013) |
| 06/14/2013 | 126 | NOTICE of Withdrawal of Counsel. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Waagner, Brian) (Entered: 06/14/2013) |
| 06/14/2013 | 127 | SUBPOENA ISSUED for Integrated Mission Solutions, LLC on 06/28/2013 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/14/2013) |
| 06/14/2013 | 128 | RULE 26 DISCLOSURE.Document filed by Thomas W. Charron, Jr. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Basdekis, Athanasios) (Entered: 06/14/2013) |
| 06/17/2013 | 129 | SUBPOENA ISSUED for Bank of America, N.A. on July 8, 2013 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/17/2013) |
| 06/20/2013 | 130 | SUBPOENA ISSUED for Sagent Advisors, Inc. on July 5, 2013 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/20/2013) |
| 06/21/2013 | 131 | SUBPOENA ISSUED for Jefferies LLC on 07/02/13 at 9:00 am.Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/21/2013) |
| 06/21/2013 | 132 | SUBPOENA ISSUED for BNY Mellon-Alcentra on 7/05/13 at 9:00 a.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/21/2013) |
| 06/21/2013 | 133 | SUBPOENA ISSUED for Bank of America, N.A. on July 12, 2013 at 9:00 a.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/21/2013) |
| 06/21/2013 | 134 | SUBPOENA ISSUED for Frances J. DeBlasio on June 28, 2013 at 9:00 a.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/21/2013) |

Case 15-256, Document 6, 02/11/2015, 1437190, Page30 of 98

| | | |
|---|---|---|
| 06/24/2013 | 135 | ANSWER to 77 Counterclaim. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 06/24/2013) |
| 06/24/2013 | 136 | SUBPOENA ISSUED for The McLean Group on July 3, 2013 at 9:00 a.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/24/2013) |
| 06/24/2013 | 137 | SUBPOENA ISSUED for Pasquale DeBlasio on July 8, 2013 at 9:00 a.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/24/2013) |
| 06/24/2013 | 138 | NOTICE to Take Deposition of John P. DeBlasio on July 9, 2013 at 9:00 a.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/24/2013) |
| 06/26/2013 | 139 | SUBPOENA ISSUED for BNY Mellon-Alcentra on July 22, 2013 at 9:30 a.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/26/2013) |
| 06/27/2013 | 140 | NOTICE OF WITHDRAWAL OF COUNSEL:PLEASE TAKE NOTICE that Sarah M. Graves and Claude P. Goddard are no longer associated with Husch Blackwell LLP and should be removed from the Court's service list with respect to this action. Husch Blackwell LLP continues to serve as counsel for Defendants Sallyport Global Holdings~ Inc., Gian Paul DeBlasio, and JPD Private Trust Company, LTD, as trustee of the GPD Charitable Trust. All future correspondence and papers in this action should continue to be directed to them. (Signed by Judge William H. Pauley, III on 6/24/2013) (js) (Entered: 06/27/2013) |
| 06/27/2013 | 141 | TRANSCRIPT of Proceedings re: TELEPHONE CONFERENCE held on 6/10/2013 before Judge William H. Pauley, III. Court Reporter/Transcriber: Tara Jones, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/22/2013. Redacted Transcript Deadline set for 8/1/2013. Release of Transcript Restriction set for 9/30/2013.(Rodriguez, Somari) (Entered: 06/27/2013) |
| 06/27/2013 | 142 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TELEPHONE CONFERENCE proceeding held on 6/10/13 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(Rodriguez, Somari) (Entered: 06/27/2013) |
| 06/27/2013 | 143 | SUBPOENA ISSUED for Integrated Mission Solutions, LLC on July 11, 2013 at 9:00 a.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/27/2013) |
| 06/27/2013 | 144 | SUBPOENA ISSUED for Jefferies LLC on July 11, 2013 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) |

| | | (Entered: 06/27/2013) |
|---|---|---|
| 06/27/2013 | 145 | SUBPOENA ISSUED for The McLean Group on July 3, 2013 at 9:00 a.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/27/2013) |
| 06/28/2013 | 146 | SUBPOENA ISSUED for Integrated Mission Solutions, LLC on July 12, 2013 at 9:00 a.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 06/28/2013) |
| 07/01/2013 | 147 | SUBPOENA ISSUED for Sagent Advisors, Inc. on July 10, 2013 at 1:00 p.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 07/01/2013) |
| 07/02/2013 | 148 | SUBPOENA ISSUED for The McLean Group on 7/03/13 at 8:00 a.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 07/02/2013) |
| 07/02/2013 | 149 | SUBPOENA ISSUED for Bank of America on July 12, 2013 at 9:00 a.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 07/02/2013) |
| 07/02/2013 | 150 | MOTION for Thomas Fredrick Rath to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8657779. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Attachments: # 1 Exhibit Certificate of Good Standing, # 2 Text of Proposed Order)(Waagner, Brian) (Entered: 07/02/2013) |
| 07/02/2013 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 150 MOTION for Thomas Fredrick Rath to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8657779. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 07/02/2013) |
| 07/03/2013 | 151 | ORDER FOR ADMISSION PRO HAC VICE granting 150 Motion for Thomas Fredrick Rath to Appear Pro Hac Vice. It is hereby Ordered that Thomas F. Rath is admitted Pro Hac Vice to appear for all purposes as counsel for John DeBlasio, JPD Private Trust Company, LTD, and Sallyport Global Holdings, Inc. (Signed by Judge William H. Pauley, III on 7/2/2013) (mro) (Entered: 07/03/2013) |
| 07/03/2013 | 152 | ORDER: The Court will hold a telephone conference July 11, 2013 at 2:30 p.m. to discuss Defendants' proposed summary judgment motion and the parties' discovery disputes. Counsel is directed to provide the Court with dial-in information before the conference. ( Telephone Conference set for 7/11/2013 at 02:30 PM before Judge William H. Pauley, III.) (Signed by Judge William H. Pauley, III on 7/2/2013) (mro) (Entered: 07/03/2013) |
| 07/03/2013 | 153 | SUBPOENA ISSUED for Bank of America, N.A. on July 12, 2013 at 9:00 a.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 07/03/2013) |

| 07/08/2013 | 154 | SUBPOENA ISSUED for Thomas Campbell on July 16, 2013 at 10:00 a.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 07/08/2013) |
| 07/08/2013 | 155 | SUBPOENA ISSUED for Robert "Tony" Grimes on July 11, 2013 at 9:00 a.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 07/08/2013) |
| 07/09/2013 | 156 | SCHEDULING ORDER: The telephone conference scheduled for July 11, 2013 is rescheduled from 2:30 p.m. to 4:30 p.m. (Telephone Conference set for 7/11/2013 at 04:30 PM before Judge William H. Pauley III.) (Signed by Judge William H. Pauley, III on 7/9/2013) (mro) (Entered: 07/10/2013) |
| 07/12/2013 | 157 | SCHEDULING ORDER: The Court having held a teleconference with counsel for the parties, the following schedule is established: 1. Defendants will file a motion for summary judgment by July 31, 2013; 2. Plaintiffs opposition is due August 23, 2013; 3. Defendants' reply, if any, is due September 6, 2013; 4. The Court will hold oral argument September 26, 2013 at 5:00 p.m. before Judge William H. Pauley III. (Signed by Judge William H. Pauley, III on 7/11/2013) (mro) Modified on 7/15/2013 (mro). (Entered: 07/12/2013) |
| 07/16/2013 | 158 | NOTICE OF APPEARANCE by Thomas F Rath on behalf of Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Rath, Thomas) (Entered: 07/16/2013) |
| 08/02/2013 | 159 | ENDORSED LETTER addressed to Judge William H. Pauley, III from Thanos Basdekis and Brian Waagner dated 7/30/13 re: Counsel requests the following extensions: All motions for summary judgment due: 8/5/13; All oppositions due: 8/23/13; All replies due: 9/6/13 and Oral Argument (10:00 a.m.): 9/26/13. ENDORSEMENT: Application granted. Plaintiff may file his proposed summary judgment motion. The Court adopts the parties' proposed briefing schedule for both Plaintiff's and Defendants' summary judgment motions. ( Motions due by 8/5/2013., Responses due by 8/23/2013, Replies due by 9/6/2013., Oral Argument set for 9/26/2013 at 10:00 AM before Judge William H. Pauley III.) (Signed by Judge William H. Pauley, III on 8/1/2013) (mro) (Entered: 08/02/2013) |
| 08/05/2013 | 160 | MOTION for Summary Judgment. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. Responses due by 8/23/2013 Return Date set for 9/26/2013 at 05:00 PM.(Waagner, Brian) (Entered: 08/05/2013) |
| 08/05/2013 | 161 | RULE 56.1 STATEMENT. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Waagner, Brian) (Entered: 08/05/2013) |
| 08/05/2013 | 162 | MEMORANDUM OF LAW in Support re: 160 MOTION for Summary Judgment.. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Attachments: # 1 Index of Exhibits, # 2 Exhibit A, # 3 Exhibit A-1, # 4 Exhibit A-2 (part 1 of 2), # 5 Exhibit A-2 (part 2 of 2), # 6 Exhibit A-3, # 7 Exhibit A-4, # 8 Exhibit A-5, # 9 Exhibit A-6, # 10 Exhibit A-7, # 11 Exhibit A-8, # 12 Exhibit A-9, # 13 |

| | | |
|---|---|---|
| | | Exhibit A-10, # [14](#) Exhibit A-11, # [15](#) Exhibit A-12, # [16](#) Exhibit A-13, # [17](#) Exhibit A-14, # [18](#) Exhibit A-15, # [19](#) Exhibit A-16, # [20](#) Exhibit A-17, # [21](#) Exhibit A-18, # [22](#) Exhibit A-19, # [23](#) Exhibit A-20, # [24](#) Exhibit A-21, # [25](#) Exhibit A-22, # [26](#) Exhibit A-23, # [27](#) Exhibit A-24, # [28](#) Exhibit A-25, # [29](#) Exhibit A-26, # [30](#) Exhibit A-27, # [31](#) Exhibit A-28, # [32](#) Exhibit A-29, # [33](#) Exhibit B, # [34](#) Exhibit B-1, # [35](#) Exhibit C, # [36](#) Exhibit D)(Waagner, Brian) (Entered: 08/05/2013) |
| 08/05/2013 | [163](#) | MOTION for Summary Judgment. Document filed by Thomas W. Charron, Jr. Responses due by 8/23/2013 Return Date set for 9/26/2013 at 10:00 AM. (Basdekis, Athanasios) (Entered: 08/05/2013) |
| 08/05/2013 | [164](#) | MEMORANDUM OF LAW in Support re: [163](#) MOTION for Summary Judgment.. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 08/05/2013) |
| 08/05/2013 | [165](#) | RULE 56.1 STATEMENT. Document filed by Thomas W. Charron, Jr. (Attachments: # [1](#) Exhibit 1, # [2](#) Exhibit 2, # [3](#) Exhibit 3, # [4](#) Exhibit 4, # [5](#) Exhibit 5, # [6](#) Exhibit 6, # [7](#) Exhibit 7, # [8](#) Exhibit 8, # [9](#) Exhibit 9, # [10](#) Exhibit 10, # [11](#) Supplement 11, # [12](#) Exhibit 12, # [13](#) Exhibit 13, # [14](#) Exhibit 14, # [15](#) Exhibit 15, # [16](#) Exhibit 16, # [17](#) Exhibit 17, # [18](#) Exhibit 18, # [19](#) Exhibit 19, # [20](#) Exhibit 20, # [21](#) Exhibit 21, # [22](#) Exhibit 22, # [23](#) Exhibit 23, # [24](#) Exhibit 24, # [25](#) Exhibit 25, # [26](#) Exhibit 26, # [27](#) Exhibit 27, # [28](#) Exhibit 28, # [29](#) Exhibit 29, # [30](#) Exhibit 30, # [31](#) Exhibit 31)(Basdekis, Athanasios) (Entered: 08/05/2013) |
| 08/14/2013 | 166 | ***STRICKEN DOCUMENT. Deleted document number 166 from the case record. The document was stricken from this case pursuant to [186](#) Endorsed Letter . (mro) FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT - RULE 26 DISCLOSURE.Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) Modified on 8/15/2013 (ka). Modified on 11/25/2013 (mro). (Entered: 08/14/2013) |
| 08/14/2013 | [167](#) | FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT - RULE 26 DISCLOSURE.Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) Modified on 8/15/2013 (ka). (Entered: 08/14/2013) |
| 08/15/2013 | | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - NON-ECF DOCUMENT ERROR. Note to Attorney Athanasios Basdekis to MANUALLY RE-FILE Document No. 166 Expert Witness Report. This document is not filed via ECF. (ka) (Entered: 08/15/2013) |
| 08/15/2013 | | ***NOTE TO ATTORNEY THAT THE ATTEMPTED FILING OF Document No. [167](#) HAS BEEN REJECTED. Note to Attorney Athanasios Basdekis : THE CLERK'S OFFICE DOES NOT ACCEPT LETTERS FOR FILING, either through ECF or otherwise, except where the judge has ordered that a particular letter be docketed. Letters may be sent directly to a judge. (ka) (Entered: 08/15/2013) |
| 08/23/2013 | [168](#) | COUNTER STATEMENT TO [165](#) Rule 56.1 Statement,,. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Waagner, Brian) (Entered: 08/23/2013) |

| | | |
|---|---|---|
| 08/23/2013 | 169 | MEMORANDUM OF LAW in Opposition re: 163 MOTION for Summary Judgment.. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Attachments: # 1 Appendix Defendants' Exhibit List, # 2 Exhibit Exhibit A, # 3 Exhibit Exhibit A-1, # 4 Exhibit Exhibit A-2, # 5 Exhibit Exhibit A-3, # 6 Exhibit Exhibit A-4, # 7 Exhibit Exhibit A-5, # 8 Exhibit Exhibit A-6, # 9 Exhibit Exhibit A-7, # 10 Exhibit Exhibit A-8, # 11 Exhibit Exhibit A-9, # 12 Exhibit Exhibit A-10, # 13 Exhibit Exhibit A-11, # 14 Exhibit Exhibit A-12, # 15 Exhibit Exhibit A-13, # 16 Exhibit Exhibit A-14, # 17 Exhibit Exhibit A-15, # 18 Exhibit Exhibit A-16, # 19 Exhibit Exhibit A-17, # 20 Exhibit Exhibit A-18, # 21 Exhibit Exhibit A-19, # 22 Exhibit Exhibit A-20, # 23 Exhibit Exhibit A-21, # 24 Exhibit Exhibit B, # 25 Exhibit Exhibit C, # 26 Exhibit Exhibit D, # 27 Exhibit Exhibit D-1, # 28 Exhibit Exhibit D-2)(Waagner, Brian) (Entered: 08/23/2013) |
| 08/23/2013 | 170 | COUNTER STATEMENT TO 161 Rule 56.1 Statement. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 08/23/2013) |
| 08/24/2013 | 171 | RESPONSE in Opposition re: 160 MOTION for Summary Judgment.. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 08/24/2013) |
| 08/24/2013 | 172 | **FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT -** RESPONSE in Opposition re: 160 MOTION for Summary Judgment.. Document filed by Thomas W. Charron, Jr. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 19, # 19 Exhibit 20, # 20 Exhibit 21, # 21 Exhibit 22, # 22 Exhibit 23, # 23 Exhibit 24, # 24 Exhibit 25, # 25 Exhibit 26, # 26 Exhibit 27, # 27 Exhibit 28, # 28 Exhibit 29, # 29 Exhibit 30, # 30 Exhibit 31, # 31 Exhibit 32, # 32 Exhibit 18)(Basdekis, Athanasios) Modified on 8/26/2013 (db). (Entered: 08/24/2013) |
| 08/24/2013 | 173 | NOTICE of Notice of Errata re: 170 Counter Statement to Rule 56.1. Document filed by Thomas W. Charron, Jr. (Attachments: # 1 Errata Amended Response to Defendants' Statement of Material Facts and Additional Facts in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment)(Basdekis, Athanasios) (Entered: 08/24/2013) |
| 09/06/2013 | 174 | REPLY MEMORANDUM OF LAW in Support re: 163 MOTION for Summary Judgment.. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 09/06/2013) |
| 09/06/2013 | 175 | COUNTER STATEMENT TO Document filed by Thomas W. Charron, Jr. (Attachments: # 1 Exhibit Exhibit List, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14)(Basdekis, Athanasios) (Entered: 09/06/2013) |
| 09/06/2013 | 176 | REPLY MEMORANDUM OF LAW in Support re: 160 MOTION for Summary Judgment.. Document filed by Gian Paul Deblasio, JPD Private |

| | | Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Attachments: # 1 Appendix Exhibit List, # 2 Exhibit Exhibit E, # 3 Exhibit Exhibit F, # 4 Exhibit Exhibit G, # 5 Exhibit Exhibit H, # 6 Exhibit Exhibit I, # 7 Exhibit Exhibit I-1, # 8 Exhibit Exhibit I-2, # 9 Exhibit Exhibit I-3, # 10 Exhibit Exhibit I-4)(Waagner, Brian) (Entered: 09/06/2013) |
|---|---|---|
| 09/20/2013 | 177 | OATH of Elizabeth Leavy. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc..(Waagner, Brian) (Entered: 09/20/2013) |
| 09/27/2013 | 178 | NOTICE to Take Deposition of James R. Hitchner on October 9, 2013 at 10:00 a.m..Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 09/27/2013) |
| 09/30/2013 | 179 | NOTICE OF APPEARANCE by Brian P. Waagner on behalf of Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Waagner, Brian) (Entered: 09/30/2013) |
| 10/01/2013 | 180 | ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for Settlement. Referred to Magistrate Judge Frank Maas. (Signed by Judge William H. Pauley, III on 10/1/2013) Copies Sent by Chambers. (mro) (Entered: 10/01/2013) |
| 10/02/2013 | 181 | ENDORSED LETTER addressed to Judge William H. Pauley, III from Thanos Basdekis and Brian Waagner dated 9/26/13 re: The parties submit this joint letter describing discovery issues in dispute and the positions of each side. ENDORSEMENT: The Court will hold a teleconference on October 9, 2013 at 5:00 p.m. to dismiss these discovery disputes. The parties are directed to provide dial-in information in advance of the conference. (Signed by Judge William H. Pauley, III on 10/2/2013) (mro) (Entered: 10/02/2013) |
| 10/10/2013 | 182 | ORDER: The Clerk of Court is directed to seal the following documents: 1. ECF Docket No. 165-22; 2. ECF Docket No. 172-10; 3. ECF Docket No. 165-29; 4. ECF Docket No. 172-31; 5. ECF Docket No. 172-6; 6. ECF Docket No. 172-12; Plaintiff is directed to file a redacted copy of the Expert Witness Report of Jeffrey M. Risius. (Signed by Judge William H. Pauley, III on 10/10/2013) (mro) (Entered: 10/11/2013) |
| 10/10/2013 | | Transmission to Sealed Records Clerk. Transmitted re: 182 Order,, to the Sealed Records Clerk for the sealing or unsealing of document or case. (mro) (Entered: 10/11/2013) |
| 10/15/2013 | 183 | NOTICE OF COURT CONFERENCE: A settlement conference in the above referenced matter has been scheduled for November 19,2013, at 10:30 a.m., before Magistrate Judge Frank Maas, in Courtroom 20A, 500 Pearl Street, New York 10007. Judge Maas has directed that the parties comply with Judge Maas' individual settlement procedures, which can be located on his page of the Court's website. Requests for adjournment must be made to the Court, in writing, at least 48 hours prior to the conference. Settlement Conference set for 11/19/2013 at 10:30 AM in Courtroom 20A, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Frank Maas. Richalyn Chambers, Courtroom Deputy Dated: October 15, 2013. (djc) (Entered: 10/15/2013) |

| 10/23/2013 | 184 | REDACTION to 172 Response in Opposition to Motion,,, *Exhibit 6* by Thomas W. Charron, Jr(Basdekis, Athanasios) (Entered: 10/23/2013) |
| --- | --- | --- |
| 10/30/2013 | 186 | ENDORSED LETTER addressed to Judge William H. Pauley, III from Thanos Basdekis and Elizabeth Leavy dated 10/28/13 re: The parties write to jointly request an Order directing that the document that appears at Docket #166 be removed from the docket. ENDORSEMENT: Application granted. The Clerk of Court is directed to remove Docket Entry #166. (Signed by Judge William H. Pauley, III on 10/30/2013) (mro) (Entered: 11/25/2013) |
| 11/14/2013 | 185 | **FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT** - JOINT PRETRIAL STATEMENT. Document filed by Thomas W. Charron, Jr, Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Attachments: # 1 Exhibit Attachment A, # 2 Exhibit Attachment B, # 3 Exhibit Attachment C, # 4 Exhibit Attachment D)(Leavy, Elizabeth) Modified on 11/15/2013 (ka). (Entered: 11/14/2013) |
| 11/15/2013 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - NON-ECF DOCUMENT ERROR. Note to Attorney Leavy, Elizabeth to E-MAIL to judgments@nysd.uscourts.gov., Document No. 185 Joint Pretrial Order. This document is not filed via ECF.** (ka) (Entered: 11/15/2013) |
| 11/19/2013 | | Minute Entry for proceedings held before Magistrate Judge Frank Maas: Settlement Conference held on 11/19/2013. (Chambers, Richalyn) (Entered: 11/19/2013) |
| 11/25/2013 | 187 | SCHEDULING ORDER: Counsel for the parties having appeared for a conference on November 22, 2013, the following is established on consent: 1. The parties will submit any motions in limine by December 18, 2013; 2. Any oppositions are due by January 14, 2014; 3. Any replies are due by January 21, 2014; 4. This Court will hold oral argument on February 7, 2014 at 11:00 a.m. 5. This Court will hold a bench trial in this matter beginning March 24, 2014, subject to the Court's criminal calendar. ( Motions due by 12/18/2013. Responses due by 1/14/2014 Replies due by 1/21/2014. Oral Argument set for 2/7/2014 at 11:00 AM before Judge William H. Pauley III.) (Signed by Judge William H. Pauley, III on 11/25/2013) (mro) (Entered: 11/26/2013) |
| 12/05/2013 | 188 | TRANSCRIPT of Proceedings re: CONFERENCE held on 11/22/2013 before Judge William H. Pauley, III. Court Reporter/Transcriber: Eve Giniger, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/30/2013. Redacted Transcript Deadline set for 1/9/2014. Release of Transcript Restriction set for 3/10/2014.(Rodriguez, Somari) (Entered: 12/05/2013) |
| 12/05/2013 | 189 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 11/22/13 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the |

| | | transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(Rodriguez, Somari) (Entered: 12/05/2013) |
|---|---|---|
| 12/18/2013 | 190 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION in Limine *to Strike Portions of Plaintiff's Exhibit List*. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Attachments: # 1 Supplement Memorandum in Support of Motion in Limine) (Waagner, Brian) Modified on 12/19/2013 (db). (Entered: 12/18/2013) |
| 12/18/2013 | 191 | MOTION in Limine *By Plaintiff to Preclude Expert Testimony by any Witness Not Noticed by Defendants as an Expert*. Document filed by Thomas W. Charron, Jr. Return Date set for 2/7/2014 at 11:00 AM.(Basdekis, Athanasios) (Entered: 12/18/2013) |
| 12/18/2013 | 192 | MEMORANDUM OF LAW in Support re: 191 MOTION in Limine *By Plaintiff to Preclude Expert Testimony by any Witness Not Noticed by Defendants as an Expert.*. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 12/18/2013) |
| 12/18/2013 | 193 | MOTION in Limine *by Plaintiff to Exclude the Introduction of Evidence as to the Performance of the LOGCAP III Contract After June 29, 2011, and Evidence as to the May 29, 2013 Settlement Agreement, Both With Respect to Valuation*. Document filed by Thomas W. Charron, Jr. Return Date set for 2/7/2014 at 11:00 AM.(Basdekis, Athanasios) (Entered: 12/18/2013) |
| 12/18/2013 | 194 | MEMORANDUM OF LAW in Support re: 193 MOTION in Limine *by Plaintiff to Exclude the Introduction of Evidence as to the Performance of the LOGCAP III Contract After June 29, 2011, and Evidence as to the May 29, 2013 Settlement Agreement, Both With Respect to Valuation.*. Document filed by Thomas W. Charron, Jr. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Basdekis, Athanasios) (Entered: 12/18/2013) |
| 12/18/2013 | 195 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** SECOND MOTION in Limine *to Exclude Evidence of Third-Party Declarations of Value*. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Attachments: # 1 Supplement Memorandum in support of motion in limine, # 2 Exhibit Ex. A (1), # 3 Exhibit Ex. A (2), # 4 Exhibit Ex. B (1), # 5 Exhibit Ex. B (2), # 6 Exhibit Ex. B (3), # 7 Exhibit Ex. B (4), # 8 Exhibit Ex. B (5), # 9 Exhibit Ex. B (6), # 10 Exhibit Ex. B (7), # 11 Exhibit Ex. B (8), # 12 Exhibit Ex. B (9), # 13 Exhibit Ex. B (10), # 14 Exhibit Ex. B (11), # 15 Exhibit Ex. B (12), # 16 Exhibit Ex. B (13), # 17 Exhibit Ex. B (14), # 18 Exhibit Ex. B (15), # 19 Exhibit Ex. B (16), # 20 Exhibit Ex. B (17), # 21 Exhibit Ex. B (18), # 22 Exhibit Ex. B (19), # 23 Exhibit Ex. B (20), # 24 Exhibit Ex. B (21), # 25 Exhibit Ex. B (22), # 26 Exhibit Ex. B (23), # 27 Exhibit Ex. B (24), # 28 Exhibit Ex. C, # 29 Exhibit Ex. D, # 30 Exhibit Ex. E)(Waagner, Brian) Modified on 12/19/2013 (db). (Entered: 12/18/2013) |
| 12/19/2013 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Brian P. Waagner to RE-FILE Document 190 MOTION in Limine *to Strike Portions of Plaintiff's Exhibit List*. ERROR(S): Supporting Documents are filed separately,** |

| | | |
|---|---|---|
| | | each receiving their own document #. Supporting Documents are found under the Event Type - Replies, Opposition and Supporting Documents. Refile 2 documents. (db) (Entered: 12/19/2013) |
| 12/19/2013 | | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Brian Waagner to RE-FILE Document 195 SECOND MOTION in Limine *to Exclude Evidence of Third-Party Declarations of Value*. ERROR(S): Supporting Documents are filed separately, each receiving their own document #. Supporting Documents are found under the Event Type - Replies, Opposition and Supporting Documents. Refile 2 documents. (db) (Entered: 12/19/2013) |
| 12/19/2013 | 196 | MOTION in Limine *to Strike Portions of Plaintiff's Exhibit List*. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc..(Waagner, Brian) (Entered: 12/19/2013) |
| 12/19/2013 | 197 | MEMORANDUM OF LAW in Support re: 196 MOTION in Limine *to Strike Portions of Plaintiff's Exhibit List*.. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Waagner, Brian) (Entered: 12/19/2013) |
| 12/19/2013 | 198 | SECOND MOTION in Limine *to Exclude Evidence of Third-Party Declarations of Value*. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc..(Waagner, Brian) (Entered: 12/19/2013) |
| 12/19/2013 | 199 | MEMORANDUM OF LAW in Support re: 198 SECOND MOTION in Limine *to Exclude Evidence of Third-Party Declarations of Value*.. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Attachments: # 1 Exhibit Ex. A (1), # 2 Exhibit Ex. A (2), # 3 Exhibit Ex. B (1), # 4 Exhibit Ex. B (2), # 5 Exhibit Ex. B (3), # 6 Exhibit Ex. B (4), # 7 Exhibit Ex. B (5), # 8 Exhibit Ex. B (6), # 9 Exhibit Ex. B (7), # 10 Exhibit Ex. B (8), # 11 Exhibit Ex. B (9), # 12 Exhibit Ex. B (10), # 13 Exhibit Ex. B (11), # 14 Exhibit Ex. B (12), # 15 Exhibit Ex. B (13), # 16 Exhibit Ex. B (14), # 17 Exhibit Ex. B (15), # 18 Exhibit Ex. B (16), # 19 Exhibit Ex. B (17), # 20 Exhibit Ex. B (18), # 21 Exhibit Ex. B (19), # 22 Exhibit Ex. B (20), # 23 Exhibit Ex. B (21), # 24 Exhibit Ex. B (22), # 25 Exhibit Ex. B (23), # 26 Exhibit Ex. B (24), # 27 Exhibit Ex. C, # 28 Exhibit Ex. D, # 29 Exhibit Ex. E)(Waagner, Brian) (Entered: 12/19/2013) |
| 01/07/2014 | 200 | FILING ERROR - DEFICIENT DOCKET ENTRY - MOTION for Michael A. Gatje to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-9229942. Motion and supporting papers to be reviewed by Clerk's Office staff. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit Certificate of Good Standing - Virginia, # 3 Exhibit Certificate of Good Standing - District of Columbia, # 4 Exhibit Certificate of Good Standing - Maryland)(Waagner, Brian) Modified on 1/7/2014 (bcu). (Entered: 01/07/2014) |
| 01/07/2014 | | >>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice regarding Document No. 200 MOTION for Michael |

| | | |
|---|---|---|
| | | **A. Gatje to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-9229942. Motion and supporting papers to be reviewed by Clerk's Office staff.. The filing is deficient for the following reason(s): Missing Certificate of Good Standing. Certificate of Good Standing must be issued from the Supreme Court of Virgina and not from a State Bar Association. Re-file the document as a Corrected Motion to Appear Pro Hac Vice and attach a valid Certificate of Good Standing, issued within the past 30 days. (bcu)** (Entered: 01/07/2014) |
| 01/14/2014 | 201 | MOTION for Michael A. Gatje to Appear Pro Hac Vice *(Corrected)*. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Exhibit Certificate of good standing - Virginia, # 3 Exhibit Certificate of good standing - District of Columbia, # 4 Exhibit Certificate of good standing - Maryland)(Waagner, Brian) (Entered: 01/14/2014) |
| 01/14/2014 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 201 MOTION for Michael A. Gatje to Appear Pro Hac Vice *(Corrected)*. Motion and supporting papers to be reviewed by Clerk's Office staff. MOTION for Michael A. Gatje to Appear Pro Hac Vice *(Corrected)*. Motion and supporting papers to be reviewed by Clerk's Office staff. MOTION for Michael A. Gatje to Appear Pro Hac Vice *(Corrected)*. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 01/14/2014) |
| 01/14/2014 | 202 | RESPONSE in Opposition to Motion re: 196 MOTION in Limine *to Strike Portions of Plaintiff's Exhibit List. Plaintiff's Opposition to Defendants' Motion in Limine to Strike Portions of Plaintiff's Witness List*. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/14/2014) |
| 01/14/2014 | 203 | RESPONSE in Opposition to Motion re: 198 SECOND MOTION in Limine *to Exclude Evidence of Third-Party Declarations of Value. Plaintiff's Opposition to Defendants' Motion in Limine to Exclude Certain Documents Related to Valuation*. Document filed by Thomas W. Charron, Jr. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Basdekis, Athanasios) (Entered: 01/14/2014) |
| 01/14/2014 | 204 | RESPONSE in Opposition to Motion re: 193 MOTION in Limine *by Plaintiff to Exclude the Introduction of Evidence as to the Performance of the LOGCAP III Contract After June 29, 2011, and Evidence as to the May 29, 2013 Settlement Agreement, Both With Respect to Valuation.*. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C)(Leavy, Elizabeth) (Entered: 01/14/2014) |
| 01/14/2014 | 205 | RESPONSE in Opposition to Motion re: 191 MOTION in Limine *By Plaintiff to Preclude Expert Testimony by any Witness Not Noticed by Defendants as an Expert.*. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Leavy, Elizabeth) (Entered: 01/14/2014) |

| 01/15/2014 | 206 | ORDER FOR ADMISSION PRO HAC VICE granting 201 Motion for Michael A. Gatje to Appear Pro Hac Vice. (Signed by Judge William H. Pauley, III on 1/15/2014) (mro) (Entered: 01/15/2014) |
| 01/21/2014 | 207 | RESPONSE in Support of Motion re: 191 MOTION in Limine *By Plaintiff to Preclude Expert Testimony by any Witness Not Noticed by Defendants as an Expert.*. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/21/2014) |
| 01/21/2014 | 208 | RESPONSE in Support of Motion re: 193 MOTION in Limine *by Plaintiff to Exclude the Introduction of Evidence as to the Performance of the LOGCAP III Contract After June 29, 2011, and Evidence as to the May 29, 2013 Settlement Agreement, Both With Respect to Valuation.*. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/21/2014) |
| 01/21/2014 | 209 | NOTICE of Notice of Withdrawal of Motion in Limine re: 194 Memorandum of Law in Support of Motion, 193 MOTION in Limine *by Plaintiff to Exclude the Introduction of Evidence as to the Performance of the LOGCAP III Contract After June 29, 2011, and Evidence as to the May 29, 2013 Settlement Agreement, Both With Respect to Valuation.*. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/21/2014) |
| 01/21/2014 | 210 | REPLY MEMORANDUM OF LAW in Support re: 196 MOTION in Limine *to Strike Portions of Plaintiff's Exhibit List.*. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Waagner, Brian) (Entered: 01/21/2014) |
| 01/21/2014 | 211 | REPLY MEMORANDUM OF LAW in Support re: 198 SECOND MOTION in Limine *to Exclude Evidence of Third-Party Declarations of Value.*. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B)(Leavy, Elizabeth) (Entered: 01/21/2014) |
| 01/23/2014 | 212 | LETTER addressed to Judge William H. Pauley, III from Brian P. Waagner dated January 23, 2014 re: Reply Memorandum in Support of Defendants' Motion in Limine to Strike Portions of Plaintiff's Exhibit List. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc..(Waagner, Brian) (Entered: 01/23/2014) |
| 01/23/2014 | 213 | LETTER addressed to Judge William H. Pauley, III from Brian P. Waagner dated January 23, 2014 re: Reply Memorandum in Support of Defendants' Motion in Limine to Exclude Evidence of Thrid-Party Declarations of Value. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc..(Waagner, Brian) (Entered: 01/23/2014) |
| 02/03/2014 | 214 | MEMORANDUM & ORDER denying 160 Motion for Summary Judgment; denying 163 Motion for Summary Judgment. The parties' summary judgment motions are denied. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 160 & 163. (Signed by Judge William H. Pauley, III on 2/3/2014) (mro) (Entered: 02/03/2014) |
| 02/07/2014 | 215 | ORDER denying 191 Motion in Limine; denying 193 Motion in Limine; denying 196 Motion in Limine; granting 198 Motion in Limine. By March 17, |

| | | 2014, the parties are directed to provide this Court with their final witness and exhibit lists and to inform the Court of any matters they wish to raise before trial. For the reasons stated on the record in open court, Defendants' motion in limine to exclude the testimony of Andrea J. Steinkamp, Dina Kapur Sanna, and Stephen Ziobrowski is granted. The remainder of the parties' in limine motions are denied. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 191, 193, 196, & 198. (Signed by Judge William H. Pauley, III on 2/7/2014) (mro) (Entered: 02/07/2014) |
|---|---|---|
| 02/18/2014 | 216 | TRANSCRIPT of Proceedings re: CONFERENCE held on 2/7/2014 before Judge William H. Pauley, III. Court Reporter/Transcriber: Carol Ganley, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/14/2014. Redacted Transcript Deadline set for 3/24/2014. Release of Transcript Restriction set for 5/22/2014.(Rodriguez, Somari) (Entered: 02/18/2014) |
| 02/18/2014 | 217 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 2/7/14 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(Rodriguez, Somari) (Entered: 02/18/2014) |
| 02/25/2014 | 218 | TRANSCRIPT of Proceedings re: ARGUMENT held on 9/26/2013 before Judge William H. Pauley, III. Court Reporter/Transcriber: Samuel Mauro, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/21/2014. Redacted Transcript Deadline set for 3/31/2014. Release of Transcript Restriction set for 5/30/2014.(Rodriguez, Somari) (Entered: 02/25/2014) |
| 02/25/2014 | 219 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a ARGUMENT proceeding held on 9/26/13 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(Rodriguez, Somari) (Entered: 02/25/2014) |
| 02/26/2014 | 220 | ORDER: I hereby authorize the following attorney(s) to bring the General Purpose Computing Device(s) ("GPCD") listed below into the Courthouse for use in a trial or proceeding in the action entitled Charron v. Sallyport, et al., No. 12-cv-6837, which is anticipated to begin on March 24, 2014 and conclude on March 27, 2014 as further set forth in this order. (Signed by Judge William H. Pauley, III on 2/26/2014) (lmb) (Entered: 02/26/2014) |
| 03/06/2014 | 221 | **FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT** - JOINT LETTER MOTION for Conference addressed to |

| | | |
|---|---|---|
| | | Judge William H. Pauley, III from Elizabeth Leavy dated March 6, 2014. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc..(Leavy, Elizabeth) Modified on 3/7/2014 (db). (Entered: 03/06/2014) |
| 03/07/2014 | | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - NON-ECF DOCUMENT ERROR. Note to Attorney Elizabeth Godofsky Leavy. Document No. 221 Letter. This document is not filed via ECF. The Court permits the filing of letters including certain types of letter motions, a Motion to Seal must be formally filed. (db) (Entered: 03/07/2014) |
| 03/07/2014 | 222 | ORDER PERMITTING USE OF COURTROOM CONNECT: I hereby authorize Courtroom Connect, a Southern District of New York contracted vendor, to provide parties in Charron V. Sallyport, et al. No. 12-cv-6837, with Internet connectivity for the duration of the proceedings, set to begin on Monday, March 24, 2014. Courtroom Connect can proceed to make proper arrangements with the District Executive Office of the Court. The approved attorneys and parties on the case are allowed to bring in the necessary electronic computing devices to connect to the Courtroom Connect Service. (Signed by Judge William H. Pauley, III on 3/7/2014) (tro) (Entered: 03/07/2014) |
| 03/07/2014 | 223 | ORDER: I hereby authorize the following attorney(s) to bring the General Purpose Computing Device(s) ("GPCD") listed below into the Courthouse for use in a trial or proceeding in the action entitled Charron v. Sallyport, et al., No. 12-cv-6837, which is anticipated to begin on March 24, 2014 and conclude on March 27, 2014. Attorney: Brian A. Glasser, Device: Cellular phone (without photo capability). (Signed by Judge William H. Pauley, III on 3/7/2014) (lmb) Modified on 3/7/2014 (lmb). (Entered: 03/07/2014) |
| 03/07/2014 | 224 | ORDER: It is hereby ORDERED that the following attorney(s) are authorized to bring the Personal Electronic Device(s) and/or the General Purpose Computing Device(s) (collectively, "Devices") listed below into the Courthouse for use in a proceeding or trial in the action captioned Charron v. Sallyport Global Holdings, Inc., et al., No. 12-cv-6837. The date(s) for which such authorization is provided is (are) March 24 to March 28, 2014. Attorney: Brian Waagner, Device(s): Laptop Computer/Printer; Michael Gatje, Device (s): Laptop Computer; Elizabeth Leavy, Device(s): Laptop Computer. (Signed by Judge William H. Pauley, III on 3/7/2014) (lmb) (Entered: 03/07/2014) |
| 03/10/2014 | 225 | PRETRIAL MEMORANDUM. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc..(Leavy, Elizabeth) (Entered: 03/10/2014) |
| 03/10/2014 | 226 | PRETRIAL STATEMENT *of Claims and Defenses*. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc..(Leavy, Elizabeth) (Entered: 03/10/2014) |
| 03/10/2014 | 227 | PRETRIAL STATEMENT *Statement of Elements of Plaintiff's Claims and Defenses and Facts in Support*. Document filed by Thomas W. Charron, Jr. (Attachments: # 1 Exhibit DTX A, # 2 Exhibit DTX AS, # 3 Exhibit DTX AT, # 4 Exhibit DTX B - Part 1, # 5 Exhibit DTX B - Part 2, # 6 Exhibit DTX |

| | | |
|---|---|---|
| | | B - Part 3, # 7 Exhibit DTX C, # 8 Exhibit DTX CE, # 9 Exhibit DTX CG, # 10 Exhibit DTX CP, # 11 Exhibit PTX 13, # 12 Exhibit PTX 15, # 13 Exhibit PTX 21 - Part 1, # 14 Exhibit PTX 21 -Part 2, # 15 Exhibit PTX 25, # 16 Exhibit PTX 29, # 17 Exhibit PTX 58 - Part 1, # 18 Exhibit PTX 58 - Part 2, # 19 Exhibit PTX 58 - Part 3, # 20 Exhibit PTX 58 - Part 4, # 21 Exhibit PTX 58 - Part 5, # 22 Exhibit PTX 101, # 23 Exhibit PTX 145, # 24 Exhibit PTX 186, # 25 Exhibit PTX 187, # 26 Exhibit PTX 190, # 27 Exhibit PTX 353, # 28 Exhibit PTX 401, # 29 Exhibit PTX 402, # 30 Exhibit PTX 403, # 31 Exhibit PTX 404, # 32 Exhibit PTX 405(f))(Basdekis, Athanasios) (Entered: 03/10/2014) |
| 03/10/2014 | 228 | PRETRIAL MEMORANDUM. Document filed by Thomas W. Charron, Jr. (Attachments: # 1 Exhibit DTX A, # 2 Exhibit DTX CE, # 3 Exhibit PTX 13, # 4 Exhibit PTX 15, # 5 Exhibit PTX58 - Part 1, # 6 Exhibit PTX58 - Part 2, # 7 Exhibit PTX58 - Part 3, # 8 Exhibit PTX58 - Part 4, # 9 Exhibit PTX58 - Part 5, # 10 Exhibit PTX101, # 11 Exhibit PTX 186, # 12 Exhibit PTX 187, # 13 Exhibit PTX 405(f))(Basdekis, Athanasios) (Entered: 03/10/2014) |
| 03/13/2014 | 229 | SCHEDULING ORDER: This will hold a teleconference on March 20, 2014 at 4:00 p.m. The parties are to provide the Court with dial-in information before the conference. Telephone Conference set for 3/20/2014 at 04:00 PM before Judge William H. Pauley III. (Signed by Judge William H. Pauley, III on 3/13/2014) (lmb) (Entered: 03/13/2014) |
| 03/26/2014 | 230 | SCHEDULING ORDER: The Court having held a teleconference with counsel for the parties on March 20, 2014, the following is established: 1. There will be a bench trial in this matter May 27-29, 2014 and June 2, 2014; 2. The courtroom will not be sealed during the trial and a sealing order for exhibits is unnecessary as trial exhibits are not publicly filed; 3. The parties are directed to submit final witness and exhibit lists by May 19, 2014. (Signed by Judge William H. Pauley, III on 3/26/2014) (lmb) (Entered: 03/26/2014) |
| 05/12/2014 | 231 | ORDER: I hereby authorize the following attorney(s) to bring the General Purpose Computing Device(s) ("GPCD") listed below into the Courthouse for use in a trial or proceeding in the action entitled Charron v. Sallyport, et al., No. 12-cv-6837, which is anticipated to begin on May 27, 2014 and conclude on June 2, 2014 as further set forth in this order. (Signed by Judge William H. Pauley, III on 5/12/2014) (lmb) (Entered: 05/12/2014) |
| 05/15/2014 | 232 | ORDER PERMITTING USE OF COURTROOM CONNECT: I hereby authorize Courtroom Connect, a Southern District of New York contracted vendor, to provide parties in Charron v. Sallyport, et al., No. 12-cv-6837, with Internet connectivity for the duration of the proceedings, set to begin on Tuesday, May 27, 2014. Courtroom Connect can proceed to make proper arrangements with the District Executive Office of the Court. The approved attorneys and parties on the case are allowed to bring in the necessary electronic computing devices to connect to the Courtroom Connect service. (Signed by Judge William H. Pauley, III on 5/15/2014) (lmb) (Entered: 05/15/2014) |
| 05/15/2014 | 233 | ORDER: The following Order is subject to the definitions, obligations and restrictions imposed pursuant to Standing Order M10-468, as Revised. Upon |

| | | |
|---|---|---|
| | | submission of written application to this Court, it is hereby ORDERED that the following attorney(s) are authorized to bring the Personal Electronic Device(s) and/or the General Purpose Computing Device(s) (collectively, "Devices") listed below into the Courthouse for use in a proceeding or trial in the action captioned Charron v. Sallyport, et al., No. 12-cv-6837. The date(s) for which such authorization is provided is (are) May 27, 2014 - June 2, 2014 as further set forth in this order. (Signed by Judge William H. Pauley, III on 5/15/2014) (lmb) Modified on 5/16/2014 (lmb). (Entered: 05/15/2014) |
| 06/18/2014 | 234 | ORDER: The following Order is subject to the definitions, obligations and restrictions imposed pursuant to Standing Order M10-468, as Revised. Upon submission of written application to this Court, it is hereby ORDERED that the following attorney(s) are authorized to bring the Personal Electronic Device(s) and/or the General Purpose Computing Device(s) (collectively, "Devices") listed below into the Courthouse for use in a proceeding or trial in the action captioned Charron v. Sallyport, et al., No. 12-cv-6837. The date(s) for which such authorization is provided is (are) August 4, 2014 to August 8, 2014 as further set forth in this order. (Signed by Judge William H. Pauley, III on 6/18/2014) (lmb) (Entered: 06/18/2014) |
| 06/18/2014 | 235 | ORDER PERMITTING USE OF COURTROOM CONNECT: I hereby authorize Courtroom Connect, a Southern District of New York contracted vendor, to provide parties in Charron v. Sallyport, et al., No. 12-cv-6837, with Internet connectivity for the duration of the proceedings, set to begin on Monday, August 4, 2014. Courtroom Connect can proceed to make proper arrangements with the District Executive Office of the Court. The approved attorneys and parties on the case are allowed to bring in the necessary electronic computing devices to connect to the Courtroom Connect service. (Signed by Judge William H. Pauley, III on 6/18/2014) (lmb) (Entered: 06/18/2014) |
| 07/16/2014 | 236 | ORDER: I hereby authorize the following attorney(s) to bring the General Purpose Computing Device(s) ("GPCD") listed below into the Courthouse for use in a trial or proceeding in the action entitled Charron v. Sallyport et al., No. 12-cv-6837, which is anticipated to begin on August 4, 2014 and conclude on August 7, 2014 as further set forth in this order. (Signed by Judge William H. Pauley, III on 7/16/2014) (lmb) (Entered: 07/16/2014) |
| 08/20/2014 | 237 | PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc..(Leavy, Elizabeth) (Entered: 08/20/2014) |
| 08/20/2014 | 238 | PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW. Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 08/20/2014) |
| 08/27/2014 | 239 | REPLY re: 238 Proposed Findings of Fact . Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Waagner, Brian) (Entered: 08/27/2014) |
| 08/27/2014 | 240 | REPLY re: 237 Proposed Findings of Fact . Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 08/27/2014) |
| | | |

| 10/06/2014 | 241 | TRANSCRIPT of Proceedings re: Trial held on 5/27/2014 before Judge William H. Pauley, III. Court Reporter/Transcriber: Paula Speer, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/30/2014. Redacted Transcript Deadline set for 11/10/2014. Release of Transcript Restriction set for 1/7/2015.(McGuirk, Kelly) (Entered: 10/06/2014) |
| --- | --- | --- |
| 10/06/2014 | 242 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Trial proceeding held on 5/27/2014 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 10/06/2014) |
| 10/06/2014 | 243 | TRANSCRIPT of Proceedings re: Trial held on 5/28/2014 before Judge William H. Pauley, III. Court Reporter/Transcriber: Carol Ganley, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/30/2014. Redacted Transcript Deadline set for 11/10/2014. Release of Transcript Restriction set for 1/7/2015.(McGuirk, Kelly) (Entered: 10/06/2014) |
| 10/06/2014 | 244 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Trial proceeding held on 5/28/2014 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 10/06/2014) |
| 10/06/2014 | 245 | TRANSCRIPT of Proceedings re: Trial held on 5/29/2014 before Judge William H. Pauley, III. Court Reporter/Transcriber: Kristen Carannante, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/30/2014. Redacted Transcript Deadline set for 11/10/2014. Release of Transcript Restriction set for 1/7/2015.(McGuirk, Kelly) (Entered: 10/06/2014) |
| 10/06/2014 | 246 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Trial proceeding held on 5/29/2014 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 10/06/2014) |
| 10/06/2014 | 247 | TRANSCRIPT of Proceedings re: Trial held on 6/2/2014 before Judge |

Case 15-256, Document 6, 02/11/2015, 1437190, Page46 of 98

| | | William H. Pauley, III. Court Reporter/Transcriber: Carol Ganley, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/30/2014. Redacted Transcript Deadline set for 11/10/2014. Release of Transcript Restriction set for 1/7/2015.(McGuirk, Kelly) (Entered: 10/06/2014) |
|---|---|---|
| 10/06/2014 | 248 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Trial proceeding held on 6/2/2014 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 10/06/2014) |
| 10/06/2014 | 249 | TRANSCRIPT of Proceedings re: Trial held on 6/3/2014 before Judge William H. Pauley, III. Court Reporter/Transcriber: Paula Speer, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/30/2014. Redacted Transcript Deadline set for 11/10/2014. Release of Transcript Restriction set for 1/7/2015.(McGuirk, Kelly) (Entered: 10/06/2014) |
| 10/06/2014 | 250 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Trial proceeding held on 6/3/2014 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 10/06/2014) |
| 10/06/2014 | 251 | TRANSCRIPT of Proceedings re: Trial held on 8/4/2014 before Judge William H. Pauley, III. Court Reporter/Transcriber: Vincent Bologna, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/30/2014. Redacted Transcript Deadline set for 11/10/2014. Release of Transcript Restriction set for 1/7/2015.(McGuirk, Kelly) (Entered: 10/06/2014) |
| 10/06/2014 | 252 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Trial proceeding held on 8/4/2014 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 10/06/2014) |
| 10/06/2014 | 253 | TRANSCRIPT of Proceedings re: Trial held on 8/5/2014 before Judge William H. Pauley, III. Court Reporter/Transcriber: Vincent Bologna, (212) |

Case 15-256, Document 6, 02/11/2015, 1437190, Page47 of 98

| | | |
|---|---|---|
| | | 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/30/2014. Redacted Transcript Deadline set for 11/10/2014. Release of Transcript Restriction set for 1/7/2015.(McGuirk, Kelly) (Entered: 10/06/2014) |
| 10/06/2014 | 254 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Trial proceeding held on 8/5/2014 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 10/06/2014) |
| 10/06/2014 | 255 | TRANSCRIPT of Proceedings re: Trial held on 8/6/2014 before Judge William H. Pauley, III. Court Reporter/Transcriber: Vincent Bologna, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/30/2014. Redacted Transcript Deadline set for 11/10/2014. Release of Transcript Restriction set for 1/7/2015.(McGuirk, Kelly) (Entered: 10/06/2014) |
| 10/06/2014 | 256 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Trial proceeding held on 8/6/14 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 10/06/2014) |
| 10/07/2014 | 257 | TRANSCRIPT of Proceedings re: Trial held on 9/4/2014 before Judge William H. Pauley, III. Court Reporter/Transcriber: Kristen Carannante, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/31/2014. Redacted Transcript Deadline set for 11/10/2014. Release of Transcript Restriction set for 1/8/2015.(McGuirk, Kelly) (Entered: 10/07/2014) |
| 10/07/2014 | 258 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Trial proceeding held on 9/4/2014 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 10/07/2014) |
| 11/12/2014 | 259 | SCHEDULING ORDER: This Court will hold a teleconference on November 19, 2014 at 11:00 a.m. to discuss Mark C. Henderson and Margaret M. Henderson's motion to intervene. The parties are directed to provide dial-in |

| | | information in advance of the conference. Telephone Conference set for 11/19/2014 at 11:00 AM before Judge William H. Pauley III. (Signed by Judge William H. Pauley, III on 11/12/2014) Copies Sent By Chambers. (ja) (Entered: 11/12/2014) |
|---|---|---|
| 11/19/2014 | 260 | LETTER addressed to Judge William H. Pauley, III from Tor Ekeland, dated 10/28/2014 re: This Firm represents Mark C. Henderson and Margaret M. Henderson, who wish to file a motion to intervene in the above-named case. Per Your Honor's Individual Practices, we are filing this letter in order to request a pre-motion conference to determine whether Mr. and Ms. Henderson will be permitted to file a motion to intervene.... (ja) (Entered: 11/19/2014) |
| 11/21/2014 | 261 | ORDER: The motion of Mark C. Henderson and Margaret M. Henderson to intervene in this action under Rule 24 is denied for the reasons stated on the record on November 19, 2014. (Signed by Judge William H. Pauley, III on 11/21/2014) Copies Sent By Chambers. (lmb) (Entered: 11/21/2014) |
| 12/09/2014 | 262 | TRANSCRIPT of Proceedings re: conference held on 11/19/2014 before Judge William H. Pauley, III. Court Reporter/Transcriber: Patricia Nilsen, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2015. Redacted Transcript Deadline set for 1/12/2015. Release of Transcript Restriction set for 3/12/2015.(McGuirk, Kelly) (Entered: 12/09/2014) |
| 12/09/2014 | 263 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 11/19/2014 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 12/09/2014) |
| 12/10/2014 | 264 | OPINION & ORDER #105067: This lawsuit is a sad denouement to what began as a vibrant and symbiotic partnership between two West Point graduates. After serving their country in the military, they continued to serve by providing logistical support in dangerous overseas theaters. That business earned them tens of millions of dollars. Ultimately, each turned his vast fortune against the other in a litigation bonanza rivaling Warren Adler's "The War of the Roses." This business divorce should never have spilled into a federal courtroom. For the reasons set forth in this Opinion and Order, Plaintiff Thomas W. Charron, Jr. is entitled to 20% of $78,986,580.75, which is $15,797,316.15 against Defendants Sallyport Global Holdings, Inc.; JPD Private Trust Company, Ltd; and John P. DeBlasio. Defendant Sallyport Global Holdings, Inc. is entitled to $227,364.22 on its counterclaims for conversion and unjust enrichment against Charron. The parties are directed to submit a proposed final judgment by December 22, 2014. (Signed by Judge William H. Pauley, III on 12/10/2014) (tn) Modified on 12/16/2014 (ca). (Entered: 12/10/2014) |

Case 15-256, Document 6, 02/11/2015, 1437190, Page49 of 98

| | | |
|---|---|---|
| 12/24/2014 | 265 | AMENDED OPINION & ORDER #105067 amending 264 Opinion and Order. This lawsuit is a sad denouement to what began as a vibrant and symbiotic partnership between two West Point graduates. After serving their country in the military, they continued to serve by providing logistical support in dangerous overseas theaters. That business earned them tens of millions of dollars. Ultimately, each turned his vast fortune against the other in a litigation bonanza rivaling Warren Adler's "The War of the Roses." This business divorce should never have spilled into a federal courtroom. For the reasons set forth in this Opinion and Order, Plaintiff Thomas W. Charron, Jr. is entitled to 20% of $81,736,578, which is $16,347,315.60 against Defendants Sallyport Global Holdings, Inc.; JPD Private Trust Company, Ltd; and John P. DeBlasio. Defendant Sallyport Global Holdings, Inc. is entitled to $227,364.22 on its counterclaims for conversion and unjust enrichment against Charron. The parties are directed to submit a proposed final judgment. (Signed by Judge William H. Pauley, III on 12/24/2014) (mro) Modified on 1/5/2015 (ca). (Entered: 12/24/2014) |
| 12/31/2014 | 266 | FINAL JUDGMENT ORDER: that the total award to Plaintiff as of December 24, 2014 is $21,458,426.99 and interest shall accrue thereafter at the rate of $4,030.84 per day until entry of the final judgment. The total award to Sallyport Global Holdings, Inc. as of December 24, 2014 is $282,567.01 and interest shall accrue thereafter at the rate of $37.37 per day until entry of the final judgment. After the award to Sallyport Global Holdings, Inc. of $282,567.01 plus $37.37 per day after December 24, 2014, is set off against the award to Plaintiff Thomas W. Charron of $21,458,426.99 plus $4,030.84 per day after December 24, 2014, Plaintiff is awarded as a final judgment the amount of $21,175,859.98, plus $3,993.47 per day of additional prejudgment interest until entry of final judgment, and thereafter, post-judgment interest at the applicable federal interest rate of 0.23% until such time as the final judgment is paid. (Signed by Judge William H. Pauley, III on 12/31/2014) (tn) (Entered: 12/31/2014) |
| 12/31/2014 | | Terminate Transcript Deadlines (tn) (Entered: 12/31/2014) |
| 01/16/2015 | 267 | NOTICE OF APPEARANCE by Kevin W. Barrett on behalf of Thomas W. Charron, Jr. (Barrett, Kevin) (Entered: 01/16/2015) |
| 01/20/2015 | 268 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Service served on AECOM Technology Corporation on 1/16/15. Service was accepted by CT Corporation System, Registered Agent. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/20/2015) |
| 01/20/2015 | 269 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Notice served on William Blair Company, L.L.C. on 1/16/16. Service was accepted by CT Corporation System, Registered Agent. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/20/2015) |
| 01/20/2015 | 270 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Notice served on Tetra Tech, Inc. on 1/16/15. Service was accepted by CT Corporation System, Registered Agent. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/20/2015) |
| | | |

| 01/20/2015 | 271 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Notice served on URS Corporation on 1/16/15. Service was accepted by CT Corporation System, Registered Agent. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/20/2015) |
| --- | --- | --- |
| 01/20/2015 | 272 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Notice served on JPMorgan Chase & Co. on 1/16/15. Service was accepted by CT Corporation System, Registered Agent. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/20/2015) |
| 01/21/2015 | 273 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Notice served on Michael Baker International, LLC on 1/20/15. Service was accepted by Robert Gallup, Authorized Agent. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/21/2015) |
| 01/22/2015 | 274 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Notice served on Bank of America Corporation on 1/20/15. Service was accepted by Andra Bernard, General Agent. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/22/2015) |
| 01/22/2015 | 275 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Notice served on Deutsche Bank, AG on 1/20/15. Service was accepted by Diana Hui, Legal Clerk. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/22/2015) |
| 01/22/2015 | 276 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Notice served on Goldman Sachs & Co. on 1/20/15. Service was accepted by Deborah A. Rivera, Vice President. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/22/2015) |
| 01/22/2015 | 277 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Notice served on HSBC Bank USA, N.A. on 1/20/15. Service was accepted by Mannar Mikhal, General Agent. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/22/2015) |
| 01/22/2015 | 278 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Notice served on JPMorgan Chase & Co. on 1/20/15. Service was accepted by Sati Jairam, Process Clerk. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/22/2015) |
| 01/22/2015 | 279 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Notice served on The Louis Berger Group, Inc. on 1/20/15. Service was accepted by Rosa Poblet, Authorized Agent. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/22/2015) |
| 01/22/2015 | 280 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Notice served on PNC Bank, National Association on 1/20/15. Service was accepted by Sana Ashfaq, General Agent. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/22/2015) |
| 01/22/2015 | 281 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Notice served on Tetra Tech, Inc. on 1/20/15. Service was accepted by Lenore Ledonne, General Agent. Document filed by Thomas W. Charron, Jr. |

| | | (Basdekis, Athanasios) (Entered: 01/22/2015) |
|---|---|---|
| 01/22/2015 | 282 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Notice served on URS Corporation on 1/20/15. Service was accepted by Joanne Pabst, General Agent. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/22/2015) |
| 01/22/2015 | 283 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Notice served on William Blair & Company, LLC on 1/20/15. Service was accepted by Claire Smith, Managing Agent. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/22/2015) |
| 01/22/2015 | 284 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Notice served on Wells Fargo & Company on 1/20/15. Service was accepted by Steven Rosario, General Agent. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/22/2015) |
| 01/22/2015 | 285 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Notice served on The Louis Berger Company, Inc. on 1/20/15. Service was accepted by Maureen Cogan, General Agent. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/22/2015) |
| 01/22/2015 | 286 | AFFIDAVIT OF SERVICE of Information Subpoena With Restraining Notice served on AECOM Technology Corporation on 1/20/15. Document filed by Thomas W. Charron, Jr. (Basdekis, Athanasios) (Entered: 01/22/2015) |
| 01/28/2015 | 287 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU** - LETTER MOTION for Conference re: 266 Judgment,,,, addressed to Judge William H. Pauley, III from Brian A. Glasser dated 1/28/15. Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) Modified on 1/29/2015 (ldi). (Entered: 01/28/2015) |
| 01/28/2015 | 288 | NOTICE OF APPEAL from 266 Judgment,,,,. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. Filing fee $ 505.00, receipt number 0208-10540591. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Lefkowitz, Jay) (Entered: 01/28/2015) |
| 01/29/2015 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 288 Notice of Appeal. (tp) (Entered: 01/29/2015) |
| 01/29/2015 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 288 Notice of Appeal, filed by Sallyport Global Holdings, Inc., JPD Private Trust Company, Ltd., Gian Paul Deblasio were transmitted to the U.S. Court of Appeals. (tp) (Entered: 01/29/2015) |
| 01/29/2015 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR. Note to Attorney Athanasios Basdekis to RE-FILE Document 287 LETTER MOTION for Conference re: 266 Judgment, addressed to Judge William H. Pauley, III from Brian A. Glasser dated 1/28/15. Use the event type Letter found under the event list Other Documents. (ldi)** (Entered: 01/29/2015) |
| | | |

| | | |
|---|---|---|
| 01/29/2015 | 289 | LETTER addressed to Judge William H. Pauley, III from Brian A. Glasser dated 1/28/15 re: Plaintiff's Request for Authority to Register Final Judgment in Other Districts Under 28 U.S.C. 1963. Document filed by Thomas W. Charron, Jr.(Basdekis, Athanasios) (Entered: 01/29/2015) |
| 02/04/2015 | 290 | LETTER addressed to Judge William H. Pauley, III from Jay P. Lefkowitz, P.C. dated 2/4/2015 re: Response to Plaintiff's Letter and Request for Stay of Judgment. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc..(Lefkowitz, Jay) (Entered: 02/04/2015) |
| 02/05/2015 | 291 | MEMO ENDORSEMENT on re: 290 LETTER addressed to Judge William H. Pauley, III from Jay P. Lefkowitz, P.C. dated 2/4/2015 re: Response to Plaintiff's Letter and Request for Stay of Judgment. Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc. ENDORSEMENT: The parties are directed to appear for a teleconference on February 5, 2015 at 3:00 p.m. Defendants are directed to provide this Court with conference call information prior to the teleconference. So ordered. (Tele-Conference set for 2/5/2015 at 03:00 PM before Judge William H. Pauley III.) (Signed by Judge William H. Pauley, III on 2/5/2015) (rjm) (Entered: 02/05/2015) |
| 02/05/2015 | 292 | NOTICE OF APPEARANCE by Jay Philip Lefkowitz on behalf of Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Lefkowitz, Jay) (Entered: 02/05/2015) |
| 02/05/2015 | 293 | NOTICE OF APPEARANCE by David Scott Flugman on behalf of Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Flugman, David) (Entered: 02/05/2015) |
| 02/06/2015 | 294 | DECLARATION of John P. DeBlasio . Document filed by Gian Paul Deblasio, JPD Private Trust Company, Ltd., Sallyport Global Holdings, Inc.. (Flugman, David) (Entered: 02/06/2015) |
| 02/06/2015 | 295 | SCHEDULING ORDER: Motions due by 2/13/2015. Responses due by 2/19/2015 Oral Argument set for 2/23/2015 at 05:00 PM before Judge William H. Pauley III. (Signed by Judge William H. Pauley, III on 2/6/2015) (spo) (Entered: 02/06/2015) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/11/2015 17:02:44 | | |
| **PACER Login:** | KirklandPACER:4372265:3934342 | **Client Code:** | 18907-0001/26565 |
| **Description:** | Docket Report | **Search Criteria:** | 1:12-cv-06837-WHP |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                :

THOMAS W. CHARRON, JR.,                     12cv6837

              Plaintiff,      :        AMENDED OPINION & ORDER

                      :

         -against-         :

SALLYPORT GLOBAL HOLDINGS,
INC., *et al.*,                  :

             Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

        This breach of contract action arises out of a business divorce. For many in the service of their country, terrible sacrifices have been exacted in Iraq and Afghanistan. For others, including Plaintiff Thomas W. Charron, Jr. and Defendant John P. DeBlasio, those armed conflicts presented lucrative opportunities. Just how lucrative is put into stark relief by this case. The two primary players in this lawsuit grew a startup government contractor into an enterprise with thousands of employees providing mission-critical logistical support to Government operations abroad and generating annual revenues in the tens of millions of dollars.

        While their business boomed, animosity between the two abounded, leading to an agreement in which DeBlasio bought out Charron. But that deal had a catch: if DeBlasio sold the company within one year at a sufficient price, Charron got to share in the proceeds of the sale. That provision is the primary subject of this lawsuit. Also at issue, Defendant Sallyport Global Holdings, Inc. counterclaims that Charron misappropriated funds as his transaction with DeBlasio closed. Following a three-week bench trial, this Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.

-1-

## BACKGROUND

It is little surprise the two main players in this case ended up as military contractors. Both Charron and DeBlasio graduated from the United States Military Academy at West Point. After seven years of active duty, Charron left military service and earned an MBA at the University of North Carolina. (Tr. 403–04 (Charron).[1]) Thereafter, he held a number of positions in the high-tech industry before founding Defendant Sallyport Global Holdings, Inc. (SGH). Charron started SGH as a sole proprietorship in 2003 and funded it with a $100,000 home equity loan. (Tr. 403, 504–06 (Charron).) DeBlasio left military service as a lieutenant colonel after 21 years of active and reserve duty. (Tr. 220–21 (J. DeBlasio).) While a reservist, he spent several years in executive positions in three different divisions at General Electric. (Tr. 221 (J. DeBlasio).)

In January 2004, Charron and DeBlasio were introduced to each other in Iraq by another West Point graduate. (Tr. 222 (J. DeBlasio); 404 (Charron).) They met again in April and began working together, utilizing their networks of contacts in Iraq. (Tr. 222 (J. DeBlasio).) Their initial collaboration was successful, and later in 2004, Charron offered DeBlasio a 50% equity interest in his fledgling enterprise. (Tr. 407 (Charron).) DeBlasio accepted Charron's offer of sweat equity. Under their operating agreement, Charron was the chief executive officer, and DeBlasio served as president. (Tr. 504–06 (Charron)), 1868 (stipulations of fact).) Each owned half the company until December 2010. (Tr. 1868–69 (stipulations of fact).)

As the United States Government's involvement in Iraq and Afghanistan escalated, SGH's logistics business grew exponentially. With Charron and DeBlasio at the helm,

---

[1] "Tr." refers to the Trial Transcript.

SGH was hard-wired into the Department of Defense's military operations. SGH provided facility maintenance and logistical support to the United States Government and its contractors. (Tr. 222 (J. DeBlasio); 404–06 (Charron).) It dealt primarily with "contingency operations," providing short-term services abroad, principally in Iraq and Afghanistan, and more recently, in South Sudan. (Tr. 143, 220–22, 225–26, 235–36, 296 (J. DeBlasio); 479–80 (Charron); Ex. 68.) Many of its contracts were "no-bid," cloaked in secrecy, and tied to Operation Iraqi Freedom or Operation Enduring Freedom (Afghanistan). (Tr. 225–226 (J. DeBlasio).) Those contracts involved great risks: a number of SGH employees were killed, including 19 who were pulled off a bus and executed on the side of the road. (Tr. 235 (J. DeBlasio).) In DeBlasio's words, "it was one of those businesses where people had to really swallow hard to get the hairball down." (Tr. 235 (J. DeBlasio).) SGH's contracts ran the gamut from fire services at military installations to housing compounds in Mansour. (Tr. 143 (J. DeBlasio).)

SGH is the parent company of various subsidiaries. Among them, Sallyport Global Services (SGS) is a Bermuda entity wholly owned by SGH. (Tr. 132 (J. DeBlasio).) Sallyport Support Services (SSS) is a Florida entity also owned by SGH. (Tr. 118–19 (J. DeBlasio).)

As the drawdown in Iraq began in the fall of 2009, Charron and DeBlasio tried to sell their company. (Tr. 224–25 (J. DeBlasio); 1869 (stipulations of fact).) The motivation to sell SGH was driven, at least in part, by growing friction between Charron and DeBlasio. (Tr. 826–27 (Charron); 82–83, 157 (J. DeBlasio); 885, 888 (Phelps).) Because their relationship was acrimonious, Charron and DeBlasio retained various consultants to facilitate communications between them. (Tr. 408–09 (Charron).) But their differences were irreconcilable. DeBlasio's brother was SGH's accountant and tightly controlled access to the company's financial

information.  Charron believed he had "lost control" of his company and "felt [it] had been

hijacked from underneath [him]."  (Tr. 422 (Charron).)  Charron no longer wanted to travel to

Iraq, and instead sought to develop new opportunities in the United States with other

Government agencies like NASA.  (Tr. 490–91, 500–01 (Charron).)  They retained additional

investment bankers to market the company, but no firm offers materialized in 2009 or 2010.  (Tr.

241–45 (J. DeBlasio); 1869 (stipulations of fact).)

I.    The Charron Buyout

When it became clear no third party would save them from each other, the two

began discussing the possibility of one partner buying out the other or winding down the

business.  DeBlasio even proposed a "Dutch auction," where he would name a price at which he

would either sell his interest or purchase Charron's, at Charron's election.  (Tr. 287

(J. DeBlasio).)  While threats to wind down the business were exchanged, they eventually agreed

that the company would redeem Charron's shares.

SGH retained WilmerHale to draft a stock purchase agreement.  Outside

consultants placed valuations on the company.  On November 30, the concept of a "windfall

protection" provision surfaced for the first time.  (Ex. R.[2])  Charron proposed "windfall

protection" in the event DeBlasio sold the company within three years.  (Ex. R.)  DeBlasio was

"fine with a provision giving [Charron] something in the event I 'flip' the company in the next

calendar year, but beyond that it's not really fair to ask as beyond a year there would be no

'windfall' to speak of."  (Ex. R.)  Hours later, WilmerHale drafted an "industry standard"

windfall protection provision and circulated it to the parties and their advisers.  (Ex. R.)  That

---

[2] "Ex." refers to exhibits received in evidence at trial.

provision allowed Charron to receive a percentage of all proceeds from a subsequent sale.  In

response, DeBlasio instructed WilmerHale that Charron should only share in a percentage of

proceeds above a threshold amount.  (Ex. R.)  A new draft windfall provision was generated in

less than an hour and circulated reflecting that permutation.  (Ex. R.)  Confused by the new draft

provision, Charron asked for clarification and input from WilmerHale about a "reasonable

timeframe" for the provision to apply.  (Ex. R.)  WilmerHale offered different scenarios to

illustrate the operation of the provision, which let Charron share in a percentage of proceeds

above a certain amount.  After this email exchange, WilmerHale circulated a draft agreement that

included the following:

> In the event that Sallyport commits to sell shares, to a third party,
> subsequent to this transaction, for a purchase price exceeding an
> enterprise value of $65 million, in the period ending one year from
> the date of closing, the Selling Shareholder will receive 20% of the
> sales proceeds, as additional compensation.

(Ex. T at JD1-00011868.)  This language is closer to the language that was circulated earlier in

the day than it is to the language that DeBlasio requested.  But for the first time, a threshold

enterprise value of $65 million was inserted.  That figure came from DeBlasio.  (Tr. 824

(Charron).)  Charron accepted that number because he believed that the company was worth

"way more" than $65 million.  (Tr. 825 (Charron).)  There were no other iterations proposed in

subsequent email traffic.

Charron did not retain his own counsel until December 1, 2010, when he hired

Williams & Connolly.  (Tr. 55 (O'Connor).)  By that point, negotiations were well underway.

Charron's lawyer saw the draft agreement for the first time on Friday, December 3.  (Tr. 57

(O'Connor).)  He revised the proposed windfall protection language and exchanged drafts over

the weekend and on Monday, December 6.  (Tr. 58 (O'Connor).)

On December 7, Charron and SGH executed a stock purchase agreement in which SGH redeemed all of Charron's shares, leaving DeBlasio as the sole shareholder. (Ex. A.) The sense of urgency was palpable on all sides, but in retrospect, no one can explain why the parties and their highly-paid professionals rushed to conclude the transaction on an arbitrary and "self-imposed" deadline. (Tr. 398 (J. DeBlasio).) Perhaps this litigation could have been averted by several days' reflection.

Charron sold his interest in SGH for just over $40.7 million. He believed he was selling at a significant discount and that SGH was actually worth somewhere between $80 and $115 million. (Tr. 418, 424–25 (Charron).) In particular, just two months earlier, SGH had secured its largest government contract, known as LOGCAP III ("LOGCAP" stands for Logistics Civil Augmentation Program, which provides contingency support to the U.S. Army). Charron knew he would not share in this new significant source of revenue, even though the company had financed the startup costs before his departure. (Tr. 825–26 (Charron).)

The December 2010 agreement contained the following:

> 2.04 <u>Windfall Protection</u>. As additional consideration for the Shares, the Company agrees to make an additional payment to Sellers, on the basis and subject to the limitations provided in this Section 2.04. If, on or prior to the first anniversary of the date hereof, John DeBlasio or any of his affiliates or any other direct or indirect equity holder sells or agrees to sell shares of the Company's capital stock (or equity of an intervening Person or assets of the Company or any Company subsidiary) constituting 20% or more by voting power or economic value of the Company's assets or equity to a third party in one or a series of related transactions for a price that reflects an enterprise value of the Company equal to or greater than $65,000,000 (a "Windfall Sale"), within three Business Days following the closing of such Windfall Sale, the Company or such stockholder shall pay Sellers an amount equal to 20% of the proceeds received from the Windfall Sale, such payment to be made to Sellers *pro rata* in accordance with the percentages set forth on <u>Schedule I</u>.

-6-

(Ex. A § 2.04 ("Windfall Provision").)

        One of the few things the parties agree on is that DeBlasio did sell the company within a year. Whether that sale constituted a "Windfall Sale," and if so, what Charron is owed, are the primary topics of this litigation.

        There are also counterclaims against Charron relating to money Charron paid himself as the stock purchase transaction closed. On December 8, 2010, Charron deposited three checks he wrote to himself from SGH's bank account totaling $227,364.22. (Tr. 793; Ex. AS.) Charron claims he is entitled to these funds. According to Charron, he was owed $44,400 in salary for November 1, 2010 to December 7, 2010. (Tr. 467 (Charron).) He paid himself $35,237.22 to reimburse business expenses. (Tr. 468–70 (Charron).) And Charron paid himself $147,727 to settle the "Tom/John account." (Tr. 465–66 (Charron); Ex. 145.) DeBlasio and Charron would occasionally take cash out of SGH for personal use, which they tracked in a crude method they referred to as the "Tom/John account." (Tr. 148–49 (J. DeBlasio); 457–58 (Charron).) They kept track of each other's distributions with the aim of ensuring they were roughly equal over time. SGH asserts Charron was entitled to none of these payments and that they had agreed the Tom/John account was a "wash." (Tr. 869–70; 871 (Phelps); 355–56 (J. DeBlasio).) SGH makes counterclaims for the money, arguing it was a simple theft.

II.    <u>The DC Capital Transaction</u>

        DeBlasio maintains that he had no intention of selling SGH at the time the company redeemed Charron's shares. (Tr. 246 (J. DeBlasio).) However, this claim is belied by the fact that on December 19, 2010, less than two weeks after the Charron transaction, DeBlasio emailed Thomas Campbell of DC Capital Partners, a private equity firm, to inform him that he

was now SGH's sole shareholder. (Ex. BO.) Campbell responded that he "would still suggest" that DC Capital buy half of SGH, revealing this was not the first time they had discussed that possibility. (Ex. BO.) On January 11, 2011, Doug Lake of DC Capital emailed DeBlasio a proposed timeline for a transaction between DC Capital and SGH, including a 45-day exclusivity agreement and anticipated closing at the end of February. (Ex. 267.) DeBlasio responded he was "not sure why we need 45 days for closing and exclusivity given all the interaction thus far." (Ex. 267.) Clearly a sale was already on DeBlasio's mind in December 2010.

DC Capital had been a possible partner for SGH for some time. SGH's consultants contacted DC Capital in 2009 when Charron and DeBlasio first attempted to sell the company. (Tr. 310 (J. DeBlasio).) DC Capital reviewed marketing materials and met with DeBlasio, but did not move forward. (Tr. 1136–37 (Lake).) SGH reached out to DC Capital again in 2010, this time through the investment bank Sagent Advisors. DC Capital reviewed materials and conducted some due diligence (Tr. 239–41 (J. DeBlasio); 1137–38 (Lake)), and in August 2010 Campbell sent Charron and DeBlasio an indication of interest in acquiring SGH, stating DC Capital valued the company at $85 to $105 million. (Ex. 36.) DC Capital later backed away from that valuation, and no deal materialized. (Tr. 241; 311–12 (J. DeBlasio).)

After communication reopened following the Charron buyout, Campbell sent DeBlasio a letter of intent on January 20, 2011 proposing that DC Capital purchase SGH. (Ex. X.) Negotiations carried on for months, and the parties signed a final agreement on May 6, 2011. (Ex. B.) The deal closed on June 29, 2011 (the "DC Capital Transaction"). (Exs. B, C, 132.) DC Capital established a new entity, Sallyport Holdings LLC ("New Sallyport"), to acquire SGH. New Sallyport acquired not only SGH and its affiliated companies, but also an unaffiliated entity called Sallyport Global, Inc. (SGI.) At the time of the sale, SGI was owned by

the John P. DeBlasio Trust dated January 1, 2011, ("Florida Business Trust") and SGH was

owned by what is now known as the GPD Charitable Trust dated December 7, 2010 ("Bermuda

Charitable Trust," and formerly known as the John DeBlasio Charitable Trust for World Peace

and Devlopment. The trustee of the Bermuda Charitable Trust, JPD Private Trust Company,

Ltd., is also a Defendant in this action.) (Tr. 35 (O'Connor); Ex. C at Schedule 2.4.)

The DC Capital Transaction called for the Bermuda Charitable Trust to receive

$60.7 million in cash. (Ex. C at Schedule 2.4.) The Florida Business Trust was not paid in cash,

but received a 38% equity interest in New Sallyport, the acquiring company. (Ex. 7 at JD1-

00000518.) The agreement stated that the 38% interest was worth $3.8 million, which would

make the total purchase price $64.5 million—half a million dollars shy of the Windfall Provision

in the Charron stock purchase agreement.

The agreement required New Sallyport to merge with another DC Capital

company, Kaseman Holdings LLC, to form KS International (KSI.) (Tr. 30–31 (O'Connor); Ex.

C at Schedule 2.4.) The companies merged on July 29, 2011, and the Florida Business Trust's

38% stake in New Sallyport was converted into a 19.38% interest in KSI. (Tr. 1739–40

(Hitchner); 1818–19 (P. DeBlasio); 1293–94 (Risius); Ex. C ¶ 19.)

## DISCUSSION

I.   Enterprise Value

The parties agree there is no standard definition of "enterprise value." (Tr. 1299–

1300 (Risius); 1669–70 (Hitchner).) But both define it, somewhat loosely, as the overall value of

the entire business, or alternatively, as the value of the anticipated future cash flows. (Tr. 1299

(Risius); 1670–71 (Hitchner).) Charron argues that the true value of the rollover equity interest

was much greater than the stated $3.8 million, making the total value of the DC Capital

transaction greater than $65 million.  In addition, he argues DeBlasio stripped out certain assets from the company before the sale and kept them for himself, which also must be accounted for in the enterprise value.

### a.  Rollover Equity Interest

#### i.  Unreliability of $3.8 Million Value in Deal Documents

If one takes the DC Capital agreement at face value, SGH was sold for $64.5 million and there was no windfall sale.  It is Defendants' position that the $64.5 million price "agreed" to with DC Capital establishes the enterprise value of SGH and cannot be challenged.  But dissecting this deal is complicated by the fact that the sellers were paid partly in cash and partly in the stock of the acquiring entity.  Because of the two variables being negotiated, one can imagine scenarios in which the $64.5 million price in the deal papers becomes arbitrary.  For example, the parties could agree the company was worth $74.5 million and the 38% equity share worth $13.8 million, but agree to list the equity share as being worth $3.8 million and the total sale price as $64.5 million.  After agreeing to pay $60.7 million in cash and 38% of the acquiring entity, any value "assigned" to the equity stake would not affect the economics of the deal.  While the deal as a whole may be the product of an arm's length negotiation, it does not follow that the rollover equity is actually worth the $3.8 million attributed to it.

This is not to say that there was fraud, but only that because of the way the deal is structured, it is necessary to probe behind the $64.5 million figure.  There is no question DeBlasio and DC Capital were aware of the Windfall Provision as they negotiated their deal.  The amount in the deal documents, $64.5 million, is startlingly close to the $65 million trigger.  One draft of the DC Capital agreement even contained a provision stating "[a]nything to the contrary herein notwithstanding, the parties acknowledge and agree that the enterprise value of

the company is $64.5 million." (Ex. 83 § 2.2(c).)  The only purpose that provision could have served was to negate any claim that the Windfall Provision was triggered.   Aware of Charron's windfall protection clause, DC Capital insisted upon an indemnification against suits by former stockholders of SGH (Tr. 1192–98 (Lake); Ex. 74)—the only former stockholders being Charron and DeBlasio.  (Tr. 31 (O'Connor); Ex. B § 11.1.)

    None of this is damning—DeBlasio and DC Capital were well within their rights to ensure the transaction did not trigger the windfall protection clause and for DC Capital to insist on indemnification.  But it is harder to explain why DeBlasio never informed Charron of the DC Capital transaction.  Instead, Charron's lawyer had to contact DeBlasio's lawyer to ask if SGH had been sold.  (Tr. 230–34 (O'Connor).)  DeBlasio's lawyer sent an opaque two-sentence letter stating that "Sallyport has authorized me to disclose to you that a transaction involving the sale of greater than 20% by voting power of Sallyport's equity was consummated on June 29, 2011 for a price that reflected an enterprise value of Sallyport and related entities of $64.5 million."  (Ex. 8.)  No further information was given.

    This was very different from how SGH's lawyer described the transaction in another letter, just one month earlier.  Sagent Advisors, SGH's former investment bank, sued SGH in New York state court in 2011.  See Sagent Advisors Inc. v. Sallyport Global Holdings Inc., No. 653644/2011 (N.Y. Sup. Ct.).  In August 2011, SGH's lawyers wrote to Sagent's lawyers, describing the transaction very differently from how it has been represented in this litigation.  They told Sagent's lawyers that

> The transactions resulted in the redemption by SGH of 84.5% of
> the outstanding common stock owned by the John DeBlasio
> Charitable Trust for World Peace and Development, the sole
> stockholder of SGH, and the remaining 15.5% of the outstanding
> common stock of SGH was purchased by the Purchaser.  The sole

stockholder of SGI, the John P. DeBlasio Trust (the "DeBlasio Trust"), rolled over all the outstanding common stock of SGI into units of the Purchaser, resulting in the DeBlasio Trust owning 38% of the issued and outstanding voting membership units of the Purchaser (35.91% of the total number of outstanding membership units of the Purchaser.) <u>In short, the transaction with the Purchaser resulted in the direct and indirect owners of SGH and SGI prior to the Closing selling 64.09% of the affiliated group's capital stock to purchasers unrelated to the owners of SGH and SGI prior to the Closing.</u>

(Ex. 22 (emphasis added).) Oddly, the letter warns that "nothing provided or discussed herein or in any subsequent communications or dealings among Sagent and any of the SGH Affiliated Parties is to be shared in any way with Tom Charron, who is no longer affiliated with SGH and has no right to receive directly or indirectly any of such information." (Ex. 22.)

SGH's lawyers repeated this description of the transaction in a statement of facts opposing a summary judgment motion, arguing to the court that "[l]ooking at this transaction in the aggregate, the direct and indirect owners of Sallyport and SGI retained 35.91% of the ownership interest (on a fully-diluted basis after taking into account management incentive units) in the acquiring entity and, therefore, gave up only 64.09% of their ownership interests." (Ex. 21 at 30; <u>see also</u> Ex. 21 at 42.) Obviously, if DeBlasio sold 64.09% of SGH's stock for $60.7 million, the transaction reflected a total enterprise value of well over $65 million. SGH's insistence in a prior litigation that the DC Capital transaction was not what it seemed—and its insistence on keeping that fact from Charron—confirms the necessity of testing its claim that the transaction reflected an enterprise value of less than $65 million.

The curious role of SGI in the DC Capital transaction further justifies the need to probe the mechanics of the deal. SGI was formed in January 2011 with the Florida Business Trust as its sole shareholder. (Tr. 116 (J. DeBlasio).) It did not have any bank accounts or

-12-

accounting records. (Tr. 43 (O'Connor); 118 (J. DeBlasio); Ex. 132.) Unlike SGH and its subsidiaries, it had no government contracts. (Tr. 112–13 (J. DeBlasio); Ex. 132.) None of the several due diligence reports created in connection with the DC Capital transaction mention SGI. (Exs. 53; 63; 64; 74.) SGI appears to have no value whatsoever. Yet, according to the deal documents, the Florida Business Trust received its 38% interest in New Sallyport in exchange for its SGI stock.

And yet another oddity of the DC Capital Transaction is that it assigned different values to identical shares of SGH. SGH redeemed 8,450 of its shares for $54.5 million, valuing the shares at $6,449 each. But the remaining 1,550 shares were purchased for $6.2 million, valuing the shares at $4,000 each. (Ex. C at Schedule 2.4.) No one at trial explained this discrepancy. (See Tr. 661–63 (Campbell).)

Finally, $64.5 million appears to be an unrealistically low enterprise value for a company with SGH's earnings projections, meaning that either SGH was sold for well below its market value or that the rollover equity was undervalued. Earnings are measured by "EBITDA," an acronym for "earnings before interest, taxes, depreciation, and amortization." A company's current and projected EBITDA is an indicator of its overall enterprise value. Nine different sets of EBITDA projections for SGH were prepared by various parties at the time of the DC Capital Transaction, including by DC Capital and by third parties. Of all these projections, which extended six years into the future, the lowest projected annual EBITDA was $20.5 million, with Bank of New York Mellon projecting SGH's annual EBITDA to swell to over $55 million. (Tr. 1305–07 (Risius); Ex. 405(k.)090.) For its part, DC Capital made a presentation in June 2011 to the Kaseman Holdings board of directors, the company which was merging with SGH,

-13-

predicting SGH would have an EBITDA of $39.4 million in fiscal year 2011, $35.3 million in

2012, $27.4 million in 2013, and $24.9 million in 2014. (Tr. 1223–24 (Lake); Ex. 64.)

       Despite all this, Doug Lake of DC Capital Partners testified that his firm believed

"we were buying a business with a truly recurring base of EBITDA of about 10 million" because

of various risks the company faced, such as the threat of peace in the Middle East and a

corresponding troop drawdown. (Tr. 1192 (Lake).) But of course, DC Capital and every other

party was aware of these risks as they prepared their projections. The refrain at trial was that no

one actually believed DC Capital's projections—that they were overly optimistic and everyone

knew it. (See, e.g. Tr. 1069–70 (Smith) ("[T]he selling company is going to do everything they

can to puff or—I don't want [to] call it put lipstick on a pig, to make it look as good as

possible."); 1279 (Lake) (describing projections as "Optimistic. Rosy.").); 176–77 (J. DeBlasio)

(Stating the projections represented "[a]n optimistic scenario," but "I believed most of that could

happen."); 1226 (Lake) (describing projections presentation as "an opportunity . . . an investment

thesis memo").) Essentially, the testimony was that the projections were unrealistically high, but

somehow this did not qualify as intentionally misleading investors because everyone in this

business expects them to do this. But not even the shrewdest financier could bluff earnings

projections 300–400% higher than what he truly believed. $10 million was an unrealistically

low prediction of SGH's future EBITDA.

       The parties agree that $64.5 million is too low a price for a company with a future

annual EBITDA as projected. Plaintiffs' expert, Jeffrey Risius, testified that at a projected

EBITDA of $35 million, a sale of the company for $64.5 million would reflect a value 1.8 times

EBITDA, whereas government contracting companies typically are valued within a range of 5–

10 times EBITDA. (Tr. 1301–02 (Risius).) As Charron's counsel walked Tom Campbell

through the various projections and challenged his claim that SGH had an expected annual
EBITDA of $10 million, Campbell testified that "I didn't buy this company for 1.7 times
EBITDA. I'm not that lucky or fortunate. In my view, the real, dependable EBITDA was
somewhere in the $10 million zip code, and we bought the company between five and six times
EBITDA." (Tr. 647 (Campbell).) But as discussed above, the only evidence that SGH's
projected EBITDA was $10 million was trial testimony. All documents contemporaneous with
the transaction indicated SGH's EBITDA was at least twice that amount. And both Risius and
Campbell agree that contractors such as SGH should be valued at about 5 times EBITDA. In
sum, $64.5 million was too good a price to be true.

The conclusion to be drawn from all of this is that the DC Capital deal documents
do not adequately capture the transaction. As SGH's lawyers told Sagent Advisers, there was
more going on than is apparent.

### ii. McLean Group Purchase Price Allocation

In fact, errors in a valuation DC Capital had performed soon after the transaction
call into question the stated $3.8 million value of the rollover equity. DC Capital hired the
McLean Group to perform a purchase price allocation for the acquisition of SGH. (Ex. 27.) As
part of this analysis, the McLean Group was tasked to calculate the fair value of DeBlasio's
interest in KSI, which he received after the merger of New Sallyport and Kaseman. It estimated
the value of KSI's Class A shares as of June 30, 2011 (the day after the DC Capital Transaction
closed) to be $21,569,127. (Ex. 27 at 12.) But the McLean Group incorrectly believed that
DeBlasio was receiving a 17.95% share of KSI, which would be worth $3,871,033. (Ex. 27 at
12.) It is undisputed that DeBlasio's share was actually 19.38% and that McLean's calculation
was incorrect. (Tr. 1322 (Risius); 1101; 1104 (Smith).) The second mistake occurred when the

McLean Group subtracted out the value of a joint venture because the Class A shares did not participate in the profits of that enterprise. As a result, McLean subtracted $2 million from its KSI valuation. (Ex. 33 at 8, Tr. 1108–09 (Smith).) But cash flows from the joint venture had already been subtracted from the projections McLean used to value KSI (Tr. 1322 (Risius).) Because the joint venture was never included in McLean's valuation of KSI, it was improper to subtract out the $2 million. Correcting these two errors makes DeBlasio's rollover equity interest in KSI worth $4.549 million, which makes the total consideration in the DC Capital transaction over $65 million. (Ex. 405(k.)046 at Row 2; Tr. 1322–1323 (Risius); 1776–77 (Hitchner).)

And the projections DC Capital provided to the McLean Group for the purpose of the purchase price allocation varied tremendously from projections it simultaneously provided to Jeffries & Co., an investment bank hired to sell KSI. On November 9, 2011, Jeffries issued a Confidential Information Memorandum (CIM) for potential buyers of KSI. The CIM contained a set of EBITDA projections furnished by Lake from which Jeffries concluded that KSI was worth between $275 and $325 million. (Tr. 1269, 1281-82; Ex. 476.) On November 14, 2011, Lake sent a vastly different set of EBITDA projections to the McLean Group for use with the purchase price allocation. (Ex. 50, 50A.) The two sets of projections are compared below:

|  | **Jeffries Confidential Information Memorandum** | **Purchase Price Allocation to McLean Group** |
|---|---|---|
| **FY 2012** | $41.6 million | $36.3 million |
| **FY 2013** | $47.1 million | $27.4 million |
| **FY 2014** | $52.1 million | $24.9 million |
| **FY 2015** |  | $23.9 million |

The projected 2014 EBITDA provided to Jeffries is more than double what DC Capital gave to the McLean Group. The disparities arise because Lake removed several contracts from the projections sent to the McLean Group, including SGH's largest contract. (Tr. 1267–68 (Lake); 1327 (Risius); Exs. 50, 50A, 51, 51A, 405(k.)030.) Lake testified that he wanted to modify the earnings projections to account for "contracts that we were seeing were going to go away." (Tr. 1268 (Lake).) But while he accounted for these risks in performing the purchase price allocation, he was comfortable using much larger projections for presentations to potential buyers. And Lake stripped out not only wholly prospective earnings, which can always be uncertain, but also some the company had in fact already earned that were not at risk. (Tr. 1327–28 (Risius).) Lake's testimony was not credible.

Meanwhile, the Jeffries CIM claimed that its higher projections, in fact, represented a "conservative approach to forecasting." (Ex. 476 at 12.) It notes that KSI had identified a "pipeline of more than $3 billion worth of opportunities that are **not included in the Company's financial forecast.**" (Ex. 476 at 11 (emphasis in the original).) It also noted it had "conservatively assumed in its forecast" that it would win a subcontractor role with regard to a particular contract, but the "high probability" of winning the contract as the prime contractor "would represent nearly **$100 million of upside to the forecast** over the next two years." (Ex. 476 at 12 (emphasis in original).)

Thus, the $3.8 million value the McLean Group ascribed to DeBlasio's 19.38% interest in KSI was a malleable figure that could be titrated to DeBlasio and DC Capital's needs.

iii. Other KSI Investors

-17-

Perhaps the best evidence Defendants presented indicating that the value of the rollover equity was in fact $3.8 million was the claim that other investors paid the same per share price for equity in New Sallyport.  KS International Equity LLC, Bank of New York Mellon-Alcentra Mezzanine III, and Nick Gross of DC Capital Partners each nominally invested in New Sallyport, the acquiring entity, at the rate of $100,000 for each percent of its equity.  (Tr. 594–95 (Campbell); Exs. C, 296.)  This would make DeBlasio's 38% share worth $3.8 million.  But money was flowing in and out of the transaction to various parties, making these "investments" unreliable benchmarks.  For example, DC Capital supposedly invested $5.225 million in New Sallyport, but because of various fees it earned, it actually received $827,319 in the deal.  (Tr. 676–78; Ex. 306.)  And Nick Gross was not required to put any money in for his 4.75% stake in New Sallyport.  (Tr. 1669 (Hitchner); Ex. 306 at 11.)  Bank of New York Mellon also earned fees from the deal.  (Ex. 306 at 2, cells 104–109.)  Because these parties were all receiving money from the deal, it is not clear they in fact "invested" the amounts shown for their shares of New Sallyport.

### iv.  Expert Evaluation

It is necessary, then, to assess the value of DeBlasio's equity rollover interest apart from the DC Capital transaction documents.  Charron offered testimony from expert witness Jeffrey Risius on the value of DeBlasio's equity rollover.  Risius is managing director of Stout Risius Ross, where he heads the valuation and financial opinions practices.  (Tr. 1287 (Risius).)  He has 25 years of experience in valuing businesses.  (Tr. 1290 (Risius).)

Risius performed valuations both of the 19.38% interest DeBlasio received in KSI as well as the standalone value of SGH as of the DC Capital Transaction.  However, it is the interest in KSI that is relevant here.  The Windfall Provision anticipated DeBlasio selling SGH in

-18-

either one transaction "or a series of related transactions." (Ex. A § 2.04.) The DC Capital

transaction required New Sallyport to merge with Kaseman to form KSI, which happened the

following month. (Tr. 30–31 (O'Connor); Ex. C at Schedule 2.4.) The conversion of DeBlasio's

38% stake in SGH into a 19.38% stake in KSI was the second step in a "series of related

transactions."

   First, Risius valued KSI using a discounted cash flow analysis, which attempts to

quantify the present value of future cash flows. (Tr. 1324 (Risius).) As discussed above, there

were nine different sets of earnings projections for KSI. Of these, Risius used the most

conservative projections—the ones which stripped out several contracts, including some revenue

the company had already earned at the time Lake removed them. (Tr. 1343, 1513 (Risius);

1732–33 (Hitchner).) By using those conservative projections, Risius largely replicated the

McLean Group's purchase price allocation analysis.

   But a major departure from the McLean Group's analysis is the level of risk

assigned to the company. Because a discounted cash flow analysis involves discounting to

present value, there will always be a discount rate applied to projected earnings. Businesses and

projected cash flows are inherently uncertain. And because of this,

> when the analyst believes that the empirical data is not capturing
> specific company risk or specific risk to the cash flows that are
> being discounted, then the valuation analyst will sometimes make a
> subject company risk adjustment, either positive or negative,
> because he doesn't feel that the empirical data is appropriately
> capturing it all, or is overcapturing it.

(Tr. 1325 (Risius).) The McLean Group applied a discount rate of 22.25%, which included a

specific company adjustment of 10% to reflect the risks in KSI's future. (Tr. 1325 (Risius).)

Risius explained that while SGH (and by extension, KSI) faced certain risks, including its heavy

concentration in Iraq and the possibility of troop withdrawals, the McLean Group ignored the fact that the cash flow projections were already "ultraconservative." (Tr. 1326 (Risius).)  In Risius's view, the cash flows had "already been risk adjusted to more than account for the risk associated with the company." (Tr. 1326 (Risius).)  Reading from a valuation treatise, Risius testified that an "analyst must be especially careful to avoid undue double counting such as reflecting a negative factor fully by a reduction in the economic income projection and then magnifying the effect by an increase in the discount rate for the negative factor." (Tr. 1332 (Risius).)

The projections that both Risius and the McLean Group used were "ultraconservative."  The original contract waterfalls, prior to the removal of some contracts, included estimates of the probability the contracts would be won.  Lake removed seven contracts with 100% win probabilities—what should have been sure things. (Tr. 1024–35 (Smith); Exs. 50(a), 466.)  He removed another three with 90% win probabilities. (Tr. 1024–35 (Smith); Exs. 50(a), 466.)  All told, Lake eliminated $111.1 million in revenues from the projections for fiscal year 2011, $97.1 million for 2012, and $96.6 million for 2013. (Tr. 1034 (Smith); Ex. 50(a).)

No reasonable explanations were offered for excluding these revenues and also applying a high specific company adjustment.  For both, the explanation was generally that KSI faced risks from its size, its geographic concentration, and the possibility of troop withdrawals.  But these risks were adequately accounted for by the removal of hundreds of millions of dollars from KSI's projected cash flows, including from several contracts that were listed as certain or extremely likely to be renewed.

Moreover, contemporaneous documents show these risks were overstated.  Shortly before the closing of the transaction with DeBlasio, DC Capital commissioned a third-

party analysis of risks facing SGH in wake of potential troop drawdowns. (Tr. 1202 (Lake); Ex. 472.) The report concluded that "nation-building" work by the Department of State would replace work by the Department of Defense in Iraq and eventually in Afghanistan, resulting in a "positive outlook for the future" of SGH. (Ex. 63 at 4.) It predicted that "[t]he U.S. Government is likely to favor smaller, more nimble providers like Sallyport going forward." (Ex. 63 at 5.) A report by the Bank of New York Mellon similarly found SGH well prepared to face an uncertain future in the Middle East. (Ex. 53.)

Given this, Risius reasonably applied a specific company adjustment of zero in his analysis in recognition of the fact that KSI's risk was already incorporated into its earnings projections, resulting in a discount rate of 14.5%. (Tr. 1328–29, Ex. 405(k.)046.) This, along with certain other calculations in the discount cash flow analysis, results in a value of $18,286,578 for DeBlasio's share of KSI. (Tr. 1332–34 (Risius); Ex. 405(k.)046.)

Risius then performed a valuation of KSI using the guideline public company method. In this method, the evaluator identifies similar public companies and compares their market value (easily calculated for public companies) to their EBITDA. Similar companies should have similar "multiples" when you compare their value to EBITDA. By comparing KSI to "similar" public companies, Risius concluded KSI was worth $200–240 million. (Tr. 1340–42 (Risius); Ex. 405(k.)044.) Comparing the discount cash flow result with the guideline public company result, Risius settled on $210 million as the value of KSI, resulting in DeBlasio's share being worth $20,133,126. (Tr. 1341–42 (Risius); Ex. 405(k.)046.)

Defendants offered no independent analysis of the value of the rollover equity interest, relying instead on their argument that only the $3.8 million value in the deal documents is probative. Failing that, their most substantive critiques of Risius's analysis relate to figures he

relied on in valuing SGH and the guideline public companies to which he compared KSI. But this Court does not rely on that analysis in its determination. The remainder of Defendants' critiques are superficial.

For reasons explained above, Risius's discounted cash flow analysis is persuasive. By correcting the mathematical errors in the McLean Group's analysis and correcting for its double counting of risk, Risius arrived at a reasonable value for DeBlasio's equity interest in KSI. But the guideline public company analysis is significantly more subjective. No public company is truly similar to SGH or KSI, and it is too easy to cherry pick companies to push the result in either direction. To be sure, a discounted cash flow is also subjective, but the dissimilarities with the supposed guideline companies are glaring.

Therefore this Court declines to apply the upward adjustment Risius made to his discount cash flow result on the basis of his guideline public company analysis, and finds that the value of DeBlasio's rollover equity interest was $18,286,578.

b. "Asset Leakage"

In addition to the cash and equity rollover interest, Charron contends there was a third form of compensation in the DC Capital transaction, which he terms "asset leakage." Charron asserts that shortly before the closing of the transaction, DeBlasio stripped out certain SGH assets to keep for himself, essentially increasing the price he "received" by taking money out of the company instead of receiving it as payment from the purchasers.

The first of these assets are a $2.7 million loan SGS made to Arkel Sallyport Global Ltd. and a $750,000 contracts receivable agreement SGS made to Power Generation Solutions, Ltd (PGS.) (Tr. 134 (J. DeBlasio); Ex. CG.) The day before the DC Capital transaction closed, SGH assigned these assets to WD Solutions, Ltd., a Mauritius entity owned

by the Bermuda Trust. (Tr. 134 (J. DeBlasio); Ex. CG.) The parties' experts agreed that whether these loans are properly included in the "enterprise value" of SGH turns on whether they were operating assets. (Tr. 1313 (Risius); 1759–60 (Hitchner).)

In February 2008, SGS entered into a joint venture agreement with Arkel International, LLC, forming Arkel Sallyport Global. (Tr. 138 (J. DeBlasio); Ex. AW.) The agreement expressly contemplated that the joint venture might be funded by loans from the parties. (Ex. AW § 5.05.)

Charron explained many government contracts do not come with any "mobilization money." (Tr. 478 (Charron).) As a result, small companies find it difficult to take on big government contracts because of the upfront costs. Through their web of subsidiaries, Charron and DeBlasio kept $49 million in profits in a bank account in Bermuda, out of reach of the Internal Revenue Service. And that was after they paid all their expenses and themselves handsomely. Virtually all of that money came from U.S. Government contracts. A company like SGH, with its "deep pockets," got "invited to a lot of parties." (Tr. 478 (Charron).) Thus, SGH could finance a number of joint ventures in trouble spots around the world where construction, power generation, and operational support were needed.

SGS made such a loan to Arkel Sallyport just two days after the joint venture agreement was signed. (Tr. 481–83; Exs. AW, 411.) The purpose of the loan was for the joint venture to begin working in Iraq and South Sudan, and it helped Arkel Sallyport win a contract in South Sudan. (Tr. 487–88 (Charron); 155 (J. DeBlasio).)

In 2011, SGS made another loan to the joint venture, this time to build a hospital in South Sudan. (Tr. 139, 155 (J. DeBlasio); Exs. 23, 197.) SGS and PGS entered into a factoring agreement in May 2011. (Tr. 136 (J. DeBlasio); Exs. 91, 45.) The agreement called

for SGS to provide a $5 million line of credit to fund a PGS project in the United Arab Emirates. (Tr. 134–35 (J. DeBlasio); Exs. 91, 45.) PGS agreed to staff at least one SGS employee on its subcontract, which again would assist SGS in expanding its geographic reach. (Ex. 45.) In return for the $5 million loan, SGS received a $2.5 million fee, which was earned but not paid when the loan was assigned to WD Solutions. (Tr. 1317 (Risius); Ex. 45.)

The benefit to SGH was that "[i]t is very critical that you show [the Government] experience in the service of product that you are selling as well as the geography that you are working. . . . We had to show we had a presence in Africa and were doing work." (Tr. 488 (Charron).) Establishing even a minimal presence in Africa was important for SGH, as it allowed it to trumpet its past performance in an attempt to win more contracts and expand its geographic reach. (Tr. 488–89 (Charron); 139, 155 (J. DeBlasio).) The parties agree that Africa was the next frontier for SGH and that it needed to demonstrate to Government agencies that it had full-time equivalent employees on the continent. Funding these joint ventures helped SGH "get on some teams" and qualify for contracts with United States Africa Command (AFRICOM) (Tr. 488 (Charron).)

Defendants argue these loans are not operating assets because SGH and its subsidiaries were not in the lending business. The DC Capital stock purchase agreement required SGS to list any assets or services outside its ordinary course of business, but these contracts were not listed. (Tr. 1762–63 (Hitchner); Ex. 132 § 6.26(h).) Instead, they are identified among SGS's material contracts in the ordinary course of business. (Tr. 1765 (Hitchner); Ex. 132 § 6.26(h).) This all makes sense. Both loans were essential to the success of their respective ventures, which were intended, in part, to allow SGH to expand its geographic reach. By attempting to position SGH in new markets, the loans were advancing its ordinary

-24-

business, and hence were operating assets which should be counted as part of SGH's enterprise value.

In fact, an attorney emailed Doug Lake and Tom Campbell to make sure it was correct that these loans be transferred, stating "Sallyport is basically removing loans owing to SGH and SGS from the balance sheets by transferring them to John's Mauritius entity. No consideration is passing." (Ex. CD.) After some email exchanges on the subject, Lake wrote to DeBlasio

> I am still not following why the loan is being transferred to you
> personally and not staying with the company. As you highlighted
> below the 'loan' is really a working capital investment borne 100%
> by Sallyport since Arkel could not afford its share. . . . In essence
> we are stepping into an incomplete project, finishing the project,
> and then you get paid personally and the JV partners make little to
> no profit? Am I crazy or is this what you are suggesting?

(Ex. CD.) At trial, Lake testified that he came around to DeBlasio's point of view that these were not working capital and that DeBlasio could keep them. (Tr. 1159–62, 1179–80 (Lake).) But his reasoning in the emails was more convincing than his trial testimony.

Risius valued the two loans combined at $2.75 million, which Defendants' expert did not dispute. (Tr. 1314 (Risius).) This amount should be included in calculating the enterprise value reflected in the DC Capital transaction.

## II.     Proceeds Received

The $60.7 million cash payment, the $18,286,578 value of the equity rollover, and the $2.75 million value of the PGS and Arkel Sallyport loans are clearly "proceeds" from the transaction. But Charron argues there is more. The Windfall Provision applies if DeBlasio "sells or agrees to sell" 20% of SGH as measured by "voting power" or "economic value." (Ex. A § 2.04.) DeBlasio "agreed" to sell on May 6, 2011 when he signed the DC Capital agreement.

(Ex. B.) Before the deal closed, the agreement barred DeBlasio from making certain transfers

out of the company without DC Capital Partners' approval. (Exs. B, C, 132 §§ 4.2, 4.3, 6.8,

6.10.) Before the transaction closed, DeBlasio removed large amounts of cash from the

company. Charron claims these cash disbursements are "proceeds" from the DC Capital

transaction.

      In particular, the day before the closing of the DC Capital transaction, DeBlasio

transferred over $20 million to the Bermuda Charitable Trust (there is some dispute over the

actual amount.) (Tr. 87 (J. DeBlasio); 1727; 1728; 1828–29 (P. DeBlasio); Exs. 132, 210.) In

April, May, and June of 2011, SGH transferred a total of $5.7 million to the Florida Business

Trust. (Tr. 170 (J. DeBlasio); 1604–05 (Selby); Ex. 210.) In addition, SGH made a $700,000

loan in 2008 to Bernardo Garcia Manzano, a friend of DeBlasio's, in order for Manzano to build

a house in Mexico. (Ex. 17.) This loan was assigned to WD Solutions the day before the DC

Capital transaction closed. Unlike the PGS and Arkel joint ventures, the Manzano loan was not

an operating asset because it did not advance SGH's business interests.

      But the evidence clearly established that the DC Capital transaction, like most

corporate acquisitions, was on a "cash free, debt free" basis. (Tr. 600 (Campbell); 1147–48

(Lake); Exs. X, Y.) That is, DC Capital was purchasing the company only with enough working

capital to continue operations, and it was expected that DeBlasio would remove the excess cash

from the company. This is the typical practice in private equity deals. (Tr. 1671–72 (Hitchner);

1412–13 (Risius).) It would make little sense for a purchaser to buy cash, so the seller takes the

cash out of the company.

      Excess cash that is transferred to shareholders is not "proceeds" from the sale,

because this is money the company has already earned, it simply has not been invested or

disbursed. Previous discussions between Charron and DeBlasio, including the negotiations of

DeBlasio's buyout of Charron, show they both understood that excess cash would be removed

from a company before a sale and that excess cash does not comprise any of the enterprise value

of the company. (Tr. 305–06 (J. DeBlasio); 713–14; 740 (Charron); Exs. F, BG, BK, L, BM.)

Charron's attempts to claim he misused the term "enterprise value" in the past and now

understands it to include excess cash are unconvincing. (Tr. 729 (Charron) ("I have gotten a lot

smarter over the last year.").)

       Charron also asserts there was a $14 million transfer from some Sallyport entity

to the Florida Charitable Trust after the DC Capital transaction closed. This transfer would stand

apart from those above, because after closing, a transfer from Sallyport to DeBlasio would be a

payment from a company in which he was no longer the sole shareholder. The Florida

Charitable Trust's tax return listed a donation from "Sallyport Global" after the DC Capital

transaction closed, with the address as the business address of SGI and SGS. (Tr. 216–17 (J.

DeBlasio); Ex. 353.) DeBlasio claims this $14 million was actually a transfer from the Bermuda

Charitable Trust and was misidentified on the tax return. (Tr. 215, 218 (J. DeBlasio); 1838–40

(P. DeBlasio).) Defendants produced bank statements consistent with this, showing the Bermuda

Charitable Trust wired $14 million to the DeBlasio Group (Ex. 276) followed by a $14 million

deposit from an unlisted source to the Florida Charitable Trust. (Ex. 299.) DeBlasio never

adequately explained why the trust's tax return differed from his own account of where the

money came from. (Tr. 217–18 (J. DeBlasio); 1838–39 (P. DeBlasio).) And there was a

surprising lack of documentation on where exactly the funds came from. But a self-reported tax

return standing alone is not strong evidence in the face of at least some documents pointing to a

different conclusion, and not enough to carry Charron's burden that the $14 million indeed were proceeds of the sale.

Defendants raise their own arguments concerning the proceeds received. They assert that regardless of the enterprise value reflected by the deal, they will never actually receive more than $65 million. Instead of giving DeBlasio all the cash at once, the deal included a $4 million "holdback" amount which secured any liabilities DeBlasio might ultimately owe DC Capital Partners. (Exs. B at SGH1-00013898, C at TCHAR0009768.) In February 2012, DC Capital informed DeBlasio it was keeping the full $4 million. (Ex. 60.) DeBlasio sued DC Capital, resulting in a May 2013 settlement in which DeBlasio received $4 million and gave up his rollover equity interest in KSI. (Ex. AD at SGH2-00000473, 479; Tr. 337–40 (J. DeBlasio).) Another $10 million of the purchase price in the DC Capital transaction is in trust and will be released to DeBlasio in 2015 if there are no further obligations to the buyers. (Tr. 339 (J. DeBlasio); Exs. B at SGH1-00013905, C at TCHAR0009756–57.) DeBlasio testified that he received less than $50 million in cash from the DC Capital transaction, surrendered his rollover equity interest in KSI, and will not receive more than $60 million even if the full $10 million is remitted to him in 2015. (Tr. 106, 335; 337–40 (J. DeBlasio); 697 (Campbell).)

But liabilities arising later between DeBlasio and DC Capital Partners do not affect the proceeds from the transaction. Those proceeds may have eroded over time as DeBlasio incurred liabilities leading DC Capital to keep the $4 million holdback, but the fact that DeBlasio incurred liabilities to DC Capital has no more effect on the economics of the transaction than if he incurred them to a third party. What is important is the value of the proceeds DeBlasio received at the time of the transaction, not as altered by after-the-fact events.

And the May 2013 settlement was not just a buyout of his rollover equity. It was a settlement of various disputes between DeBlasio and DC Capital. (Tr. 107 (J. DeBlasio).)

Accordingly, DeBlasio's proceeds from the DC Capital transaction are the same as what comprised the calculation of SGH's enterprise value: the $60.7 million in cash, the $18,286,578 rollover equity interest, and the $2.75 million assignment of operating assets, for a total of $81,736,578.

III.  Damages

Nearly as hotly contested as the issue of whether a Windfall Sale occurred is the issue of how to construe the Windfall Provision. Again, a Windfall Sale is defined as a sale of "the Company's capital stock . . . constituting 20% or more by voting power or economic value of the Company's assets or equity to a third party in one or a series of related transactions for a price that reflects an enterprise value of the Company equal to or greater than $65,000,000." (Ex. A § 2.04.) In the event of a Windfall Sale, DeBlasio must pay Charron "an amount equal to 20% of the proceeds received from the Windfall Sale." (Ex. A § 2.04.)

Charron contends this entitles him to 20% of all proceeds received. DeBlasio responds that it is only 20% of the proceeds above the $65 million mark. DeBlasio makes his case with evidence of the parties' negotiations and drafting history. But under New York law, before turning to extrinsic evidence, DeBlasio must first show the provision is ambiguous. See, e.g., Lockheed Martin Corp. v. Retail Holdings, N.V., 639 F.3d 63, 69 (2d Cir. 2011). Ambiguity must be determined on the face of the contract; extrinsic evidence may not be introduced in an attempt to create ambiguity. Lockheed Martin, 639 F.3d at 69; W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 162 (1990). Whether a contract is ambiguous is an issue of law. Lockheed Martin, 639 F.3d at 69.

No reading of the Windfall Provision supports DeBlasio's interpretation. Charron is entitled to 20% of "the proceeds received from the Windfall Sale." There is no language introducing the concept of incremental proceeds above the $65 million enterprise value threshold. Nor does the definition of "Windfall Sale" incorporate that idea. A "Windfall Sale" is the entirety of any transaction that meets the criteria, it does not refer to the portion of the sale above the $65 million mark. Instead, the language clearly calls for Charron to receive 20% of "the proceeds received"—that is, all of the proceeds received, without qualification.

At first blush, DeBlasio's argument has a facial plausibility to it. Why would the parties agree to a provision that creates such a drastic penalty for selling the company for $65 million? For a dollar less, DeBlasio could keep the entire proceeds, but under Charron's interpretation, at $65 million he must pay Charron $13 million, netting $52 million. It creates a huge disincentive to sell the company for a price between $65 and $81.25 million, because DeBlasio would keep more by selling for a dollar less than $65 million. Such a provision is seemingly counterintuitive.

Charron has suggested a business reason for his interpretation of the provision, which could conceivably have made sense to business partners more accustomed to moving quickly than deliberately and thoughtfully. If DeBlasio sold SGH for $65 million, Charron's interpretation would result in a $13 million payment to Charron. Added to the $40.7 million he redeemed his shares for, he would net $53.7 million, and DeBlasio would net $52 million. If DeBlasio sold for more than $67.833 million, he would net a little more than Charron. (Tr. 829–30 (Charron).) Charron testified that "seemed fair" to him. (Tr. 830 (Charron).) Of course, DeBlasio could have sold less than 20% of the company or sold it for $64.9 million, but Charron said he never thought DeBlasio would do that to try to hurt him. (Tr. 825–26 (Charron).) In

-30-

fact, Charron claimed DeBlasio picked the $65 million trigger, and Charron was indifferent to it because he knew the company was worth "way more" than $65 million and he was confident DeBlasio would not sell for less. (Tr. 824–26 (Charron); 12–13 (O'Connor).)

And DeBlasio's interpretation is completely divorced from the language of the provision when one considers a Windfall Sale of less than 100% of SGH's stock. At trial, Peter Phelps, SGH's chief financial officer, explained how DeBlasio's interpretation of the Windfall Provision would be applied to a sale of 25% of the company for $25 million. Because this would reflect an enterprise value of $100 million, there is no doubt the provision is triggered. Charron's interpretation is simple: 20% of the $25 million proceeds would result in a payment to Charron of $5 million. But under DeBlasio's theory, several calculations are needed: the $65 million threshold is subtracted from the $100 million enterprise value, resulting in $35 million. Charron is then entitled to receive 20% of that $35 million difference, or $7 million. (Tr. 932–33 (Phelps).) So under DeBlasio's interpretation, some sales would result in Charron receiving more than under Charron's interpretation.

This is too far removed from the language of the Windfall Provision to be a plausible interpretation. For a sale of less than 100% of the company, DeBlasio would apply the 20% figure to the difference between the enterprise value and $65 million, but the Windfall Provision clearly states that Charron is to receive 20% of "the proceeds received." In the above example, the $35 million figure is not "proceeds received." In fact, the $35 million would be $10 million more than the proceeds actually received.

Because there is no ambiguity, DeBlasio must seek reformation of the contract. "Under New York law, a contract can be reformed only when there was a mutual mistake or unilateral mistake combined with fraud." Barbagallo v. Marcum LLP, 820 F. Supp. 2d 429, 440

-31-

(E.D.N.Y. 2011). A party seeking reformation for mutual mistake must show "show in no uncertain terms, not only that mistake . . . exists, but exactly what was really agreed upon between the parties." Loewenson v. London Market Companies, 351 F.3d 58, 61 (2d Cir. 2003) (quoting George Backer Mgmt. Corp. v. Acme Quilting Co., 46 N.Y.2d 211, 219 (1978)); see also Restatement (Second) of Contracts, §155. There is a "heavy presumption that a deliberately prepared and executed written instrument manifests the true intention of the parties, and a correspondingly high order of evidence is required to overcome that presumption." Chimart Assocs. v. Paul, 66 N.Y.2d 570, 574 (1986) (internal quotations and citations omitted). The party seeking reformation must present clear and convincing evidence. Barbagallo, 820 F. Supp. 2d at 441 (citing Nash v. Kornblum, 12 N.Y.2d 42, 46 (1962).

There is parol evidence showing DeBlasio wanted a provision that applied only to proceeds above a threshold amount. On November 30, 2010, an attorney for SGH first proposed a windfall provision that applied to the entire purchase price. (Ex. R.) DeBlasio replied, copying Charron, stating what he wanted was that "[i]n the event of a transaction in the next calendar year, [Charron] can share in a reasonable portion of anything above [a set] amount." (Ex. R.) The attorney responded, proposing contract language reflecting DeBlasio's wish that Charron receive only a percentage of the proceeds over a certain amount. (Ex. R.) He later emailed DeBlasio and Charron discussing how various scenarios would payout to Charron, again reflecting Charron receipt of a percentage above a threshold amount. (Ex. R.) All of these communications were exchanged on November 30.

But while DeBlasio wanted a provision applying to an incremental amount of the proceeds received, Charron wanted a provision that applied to all of the proceeds of a Windfall Sale. According to Charron, he wanted a provision that would apply to sales in the next three

-32-

years and provide him with 20% of all proceeds received while DeBlasio wanted a one-year

provision applying to 20% of the proceeds over a threshold. Charron maintains they

compromised with a one-year provision applying to 20% of the total proceeds. (Tr. 440–41

(Charron).) Charron's credibility on this point is questionable, as it was the first time in the

litigation he mentioned it, and it appeared to conflict with deposition testimony that he did not

recall discussing the windfall provision after the emails described above. (Tr. 745–52

(Charron).)

> The parol evidence aptly demonstrates DeBlasio <u>wanted</u> a provision that applied

only to proceeds over $65 million, but what is at issue is what the parties agreed on. SGH's

attorney proposed language that reflected DeBlasio's wish, but that language was not included in

the final agreement. Defendants argue the November 30 emails discussed above are the best

evidence of what the parties wanted in the Windfall Provision, but negotiations over the

provision continued after that date. Indeed, Charron did not retain an attorney until December 1.

(Tr. 55 (O'Connor).) Charron's lawyer testified that after receiving WilmerHale's proposed

language on December 3, he edited it and made proposals until December 6. (Tr. 58

(O'Connor).) A draft version of the agreement from November 30 contained the following:

> In the event that Sallyport commits to sell shares, to a third party,
> subsequent to this transaction, for a purchase price exceeding an
> enterprise value of $65 million, in the period ending one year from
> the date of closing, the Selling Shareholder will receive 20% of the
> sales proceeds, as additional compensation.

(Ex. T at JD1-00011868.) This provision is quite different from the language in the final

agreement, which substitutes "John DeBlasio or any of his affiliates or any other direct or

indirect equity holder" for "Sallyport," requires that a Windfall Sale be of at least 20% of the

company "by voting power or economic value of the Company's assets or equity," permits a

-33-

Windfall Sale to be "one or a series of related transactions," and requires that payment be made to Charron "within three Business Days following the closing of such Windfall Sale." (Ex. A § 2.04.) Negotiations of the Windfall Provision clearly extended beyond the November 30 email, and the best evidence of what the parties actually agreed to, as in all cases, is the contract itself. DeBlasio has not shown by clear and convincing evidence that the parties made a mutual mistake and used language different from their agreement.

In a case of unilateral mistake, a party is only entitled to reformation if the other party is guilty of fraud. AMEX Assurance Co. v. Caripedes, 316 F.3d 154, 161 (2d Cir. 2003); Barbagallo, 820 F. Supp. 2d at 440. There is no evidence of fraud on Charron's part in the negotiation and drafting of the Windfall Provision.

Having failed to present clear and convincing evidence of mutual mistake, DeBlasio is not entitled to reformation of the clear language of the Windfall Provision, which requires that Charron be paid 20% of all proceeds received from a Windfall Sale.

Finally, under New York Law, "a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right." United States Naval Inst. v. Charter Communications, Inc., 936 F.2d 692, 698 (2d Cir. 1991). Plaintiff is entitled to recover prejudgment interest at the statutory rate of 9% per annum from the date the cause of action existed until the date that the final judgment is entered. See N.Y. C.P.L.R. §§ 5001, 5002, 5004.

IV.    Counterclaims

The parties dispute what law applies to the counterclaims against Charron. Because Charron was in Florida when he wrote the checks to himself, SGH contends Florida law applies. Charron argues the New York choice of law provision in the stock purchase agreement controls. (Ex. A § 6.05.)

-34-

The scope of the choice of law provision is determined by New York Law.

Finance One Pub. Co. v. Lehman Bros. Special Financing, Inc., 414 F.3d 325, 333 (2d Cir. 2005.) Broad choice of law provisions can apply to tort claims when they state they apply to controversies "arising out of" or "relating to" the contract. Turtur v. Rothschild Registry Int'l, Inc., 26 F.3d 304, 309 (2d Cir. 1994.) But the provision here is narrower. It states

> This Agreement shall be governed by and construed in accordance with the laws of the State of New York. The parties agree that the exclusive place of jurisdiction for any action, suit or proceeding relating to this agreement shall be in the Court of the United States of America sitting in the Borough of Manhattan in the City of New York or, if such courts shall not have jurisdiction over the subject matter thereof, in the courts of the State of New York sitting therein . . .

(Ex. A § 6.05.) This provision provides only that the contract itself "be governed and construed in accordance" with New York law. That language is not broad enough to encompass tort claims relating to the contract. See Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996.) The "relating to" language relates only to the forum, not the choice of law.

"Under New York law, 'the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved.'" In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013) (quoting GlobalNet Financial.com, Inc v. Frank Crystal & Co., 449 F.3d 377, 382 (2d Cir. 2006).) There is a conflict here because Florida's civil theft statute permits treble damages and attorney's fees. Fla. Stat. §§ 772.11, 55.03(2.) New York's interest analysis test determines the law applicable to torts. In re Thelen, 736 F.3d at 219. Under that test, "the law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." In

-35-

re Thelen, 736 F.3d at 219 (omission and alteration in original) (quoting GlobalNet, 449 F.3d at

384.) "[T]he significant contacts are, almost exclusively, the parties' domiciles and the locus of

the tort." In re Thelen, 736 F.3d at 219–20 (quoting Schultz v. Boy Scouts of Am., Inc., 65

N.Y.2d 189, 197 (1985).)

"Under the interest-analysis test, torts are divided into two types, conduct-

regulating rules, such as 'rules of the road,' and loss-allocation rules, 'such as those limiting

damages in wrongful death actions, vicarious liability rules, or immunities from suit.'" In re

Thelen, 736 F.3d at 220 (quoting GlobalNet, 449 F.3d at 384.) "If conflicting conduct-regulating

laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because

that jurisdiction has the greatest interest in regulating behavior within its borders." In reThelen,

736 F.3d at 220 (quoting Cooney v. Osgood Mach., Inc., 81 N.Y.2d 66, 72 (1993).) "If the

conflict involves loss-allocation rules, 'the site of the tort is less important, and the parties'

domiciles are more important.'" In re Thelen, 736 F.3d at 220 (quoting GlobalNet, 449 F.3d at

384–88.) Here, the substantive conversion and civil theft provisions are conduct-regulating laws,

but the most salient conflict between New York and Florida law, the allowance of treble

damages, is a loss-allocation rule. Because both the site of the tort and Charron's domicile were

in Florida, Florida law applies. (Tr. 523 (Charron).)

SGH brings counterclaims for violations of Florida's civil theft statute, and in the

alternative, for conversion and unjust enrichment. Florida law provides a civil remedy allowing

for treble damages for violations of its criminal theft statutes. Fla. Stat. § 772.11. A plaintiff

must prove "by clear and convincing evidence" injury by criminal theft. Fla Stat. § 772.11;

Almeida v. Amazon.com, Inc., 456 F.3d 1316, 1326–27 (11th Cir. 2006). The relevant theft

statute here is Fla. Stat. § 812.014. To establish criminal theft, SGH must show Charron "(1)

knowingly (2) obtained or used, or endeavored to obtain or use, [SGH's] property with (3) 'felonious intent' (4) either temporarily or permanently to (a) deprive [SGH] of its right to or a benefit from the property or (b) appropriate the property to [Charron's] own use or to the use of any person not entitled to the property." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1270 (11th Cir. 2009); see also Fla. Stat. § 812.014.

Under Florida law, "[c]onversion is an 'act of dominion wrongfully asserted over another's property inconsistent with his ownership therein.'" United Techs. Corp., 556 F.3d at 1270 (quoting Thomas v. Hertz Corp., 890 So. 2d 448, 449 (Fla. Dist. Ct. App. 2004)). "The tort 'may occur where a person wrongfully refuses to relinquish property to which another has the right of possession,' and it 'may be established despite evidence that the defendant took or retained property based upon the mistaken belief that he had a right to possession, since malice is not an essential element of the action.'" United Techs. Corp., 556 F.3d at 1270 (quoting Seymour v. Adams, 638 So. 2d 1044, 1047 (Fla. Dist. Ct. App. 1994)).

To prove unjust enrichment under Florida law, SGH must show (1) "a benefit conferred" upon Charron by SGH, (2) Charron's "appreciation of the benefit," and (3) Charron's "acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." United Techs., 556 F.3d at 1270 (quoting Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006)).

Charron's first line of defense is that he deposited the checks on December 7, 2010, that the transaction closed on December 8, and that the agreement contained a release of all claims the parties might have against each other which arose before closing. (Ex. A § 5.03.) Defendants contend the deal closed on December 7 before Charron's withdrawal of funds. But exculpatory clauses, no matter how broad their language, cannot absolve liability for intentional

torts.  Loewe v. Seagate Homes, Inc., 987 So.2d 758, 760 (Fla. Dist. Ct. App. 2008); Kellums v. Freight Sales Centers, Inc., 467 So.2d 816, 817 (Fla. Dist. Ct. App. 1985); see also Lago v. Krollage, 78 N.Y.2d 95, 100 (1991); Great Northern Assocs. v. Cont'l Cas. Co., 192 A.D.2d 976, 978 (N.Y. App. Div. 1993.)  A general release is not a free pass to take what you want on your way out the door.

By December 2010, Charron had not been paid his monthly salary as SGH's CEO since October 31, 2010.  (Tr. 467 (Charron).)  The $44,400 check Charron wrote himself on December 7 accurately reflected his salary for that period, and it was reported as salary on his W2 form from SGH.  (Tr. 467 (Charron).)  But payroll checks were issued by the DeBlasio Group.  (Tr. 789 (Phelps).)  Employees, including Charron, could not just pay themselves.

Similarly, Charron failed to follow SGH's procedures for reimbursement of expenses.  Charron himself instituted a system whereby Phelps reviewed and approved expenses.  (Tr. 876 (Phelps).)  The largest of these was a $29,695 reimbursement for rental of Charron's Florida home.  (Ex. 402 at TCHAR5-000030.)  Charron claims this was a reimbursable expense because his home doubled as a headquarters for an SGH subsidiary, but there was no agreement as to whether that was a proper reimbursement.  (Tr. 872–74 (Phelps).)  As Phelps testified, DeBlasio's position might be "we don't need a Florida office, you just want to live in Florida."  (Tr. 873 (Phelps).)  And though Charron paid the rent on the Florida home in June, it apparently did not occur to him to submit the reimbursement expense until his buyout was completed.

The "Tom/John account" was a remarkably crude method for a business enterprise with tens of millions of dollars in revenue to track cash withdrawals by its two shareholders.  In 2010, Charron and DeBlasio had agreed to reconcile the account and ensure both had taken an equal amount out of the company.  (Tr. 464–65 (Charron); 355 (J. DeBlasio).)

-38-

One spreadsheet does show that DeBlasio had received $147,727 more than Charron (Ex. 145.), but no one statement of the Tom/John account appears to have been definitive. Instead, there were several versions floating around, none reconcilable with the others. (Tr. 869–70 (Phelps).) At a minimum, Charron owed a duty to SGH to state what the company owed him and to negotiate a sum when he knew that the stock purchase agreement would include a mutual exchange of general releases. He never did that. Instead, he elected to write himself a check and then hold it until he got everything he had bargained for in the stock purchase agreement.

There are even more ways in which Charron failed to follow appropriate procedures with respect to all three checks. He resigned on December 7 (Tr. 771 (Charron); Ex. AI.), and never reported to anyone at SGH that he had caused the company to issue checks to himself. And a July 9, 2010 SGH board resolution required written authorization from both DeBlasio and Charron for withdrawals of over $25,000 (Exs. AG, CP.)

Charron's unilateral and secret withdrawals were unorthodox even in an environment lax in recognizing corporate formalities. Charron wrote two of the checks on December 3 and the third on December 7, but held them until he was certain SGH had wired $40.7 million to his account and there was no chance that disputes over the checks could scuttle his buyout. And while he was facile with email, he chose not to send the supporting documentation electronically, and instead dropped it at a FedEx office. This Court finds that Charron's choreographed actions were designed for one purpose: to conceal from SGH and DeBlasio that he was taking an extra $227,364.22 out of the company coffers.

While Charron's self-help at the moment of closing is beyond the pale and constitutes a conversion and unjust enrichment, this Court cannot conclude that Charron had the requisite "felonious intent" to warrant an award of triple damages under Florida's theft statute.

As for the Tom/John account, because the different spreadsheets could not be reconciled, Phelps decided to "call it a wash, call it even." (Tr. 869–70 (Phelps).) But he noted that decision was "maybe just between Pat [DeBlasio] and I, I don't know." (Tr. 869 (Phelps).) Pat DeBlasio is John DeBlasio's brother and provided accounting services to SGH. Phelps has no recollection of telling Charron that the Tom/John account was "a wash." (Tr. 886 (Phelps).) So while Phelps may have decided the account was simply a wash, Charron may have reasonably believed the account could be reconciled based on the spreadsheet he had. With respect to accrued salary and expense reimbursements, Charron and DeBlasio often ignored the dual-signature requirement. (Tr. 476 (Charron).) And Charron could have reasonably believed his rent was a reimbursable expense. (Tr. 469–70 (Charron).) All of the other expenses were unexceptional and routine, such as economy airfares and standard hotel rooms. (Ex. 402.)

In sum, with this freewheeling approach to accounting and payments, the evidence of criminal intent is not clear and convincing. Accordingly, Defendant Sallyport Global Holdings, Inc.'s counterclaim under Florida's theft statute for treble damages fails. But its counterclaims for conversion and unjust enrichment against Charron are granted in the amount of $227,364.22.

Finally, under Florida Law, Defendant Sallyport Global Holdings, Inc. is entitled to prejudgment interest at the statutory rate of 6% per annum, the rate in effect at the time of the loss. Fla. Stat. Ann. § 55.03; Argonaut Ins. Co. v. May Plumbing Co., 474 So. 2d 212, 215 (Fla. 1985); Regions Bank v. Maroone Chevrolet, L.L.C., 118 So. 3d 251, 258 (Fla. Dist. Ct. App. 2013).

CONCLUSION

This lawsuit is a sad denouement to what began as a vibrant and symbiotic partnership between two West Point graduates. After serving their country in the military, they continued to serve by providing logistical support in dangerous overseas theaters. That business earned them tens of millions of dollars. Ultimately, each turned his vast fortune against the other in a litigation bonanza rivaling Warren Adler's "The War of the Roses." This business divorce should never have spilled into a federal courtroom.

For the reasons set forth in this Opinion and Order, Plaintiff Thomas W. Charron, Jr. is entitled to 20% of $81,736,578, which is $16,347,315.60 against Defendants Sallyport Global Holdings, Inc.; JPD Private Trust Company, Ltd; and John P. DeBlasio. Defendant Sallyport Global Holdings, Inc. is entitled to $227,364.22 on its counterclaims for conversion and unjust enrichment against Charron. The parties are directed to submit a proposed final judgment.

Dated: December 24, 2014
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Brian A. Glasser, Esq.
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301

Athanasios Basdekis, Esq.
Bailey & Glasser, LLP
2855 Cranberry Square
Morgantown, WV 26508

James B. Perrine, Esq.
Bailey & Glasser, LLP
201 Monroe Street, Suite 2170
Montgomery, AL 36104
*Counsel for Plaintiff*

Brian P. Waagner, Esq.
Elizabeth G. Leavy, Esq.
Thomas F. Rath, Esq.
Michael Gatje, Esq.
Husch Blackwell LLP
750 17th Street N.W. Suite 900
Washington, DC 20006

Daniel P. Jaffe, Esq.
Omri E. Praiss, Esq.
Husch Blackwell LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105-3441
*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/31/14

THOMAS W. CHARRON, JR., Individually
and as Trustee of the Thomas W. Charron Jr.
Grantor Retained Annuity Trust Dated
July 8, 2010,

                    Plaintiff,

         v.

SALLYPORT GLOBAL HOLDINGS, INC.,
et al.,

                    Defendants.

Civ. No. 1:12-cv-6837-WHP

### FINAL JUDGMENT ORDER

WILLIAM H. PAULEY III, District Judge:

For the reasons set forth in the Court's Amended Opinion & Order entered on December 24, 2014 [Dkt. 265], the Court's Final Judgment Order is as follows:

Plaintiff Thomas W. Charron, Jr., Individually and as Trustee of the Thomas W. Charron Jr. Grantor Retained Annuity Trust Dated July 8, 2010, is entitled to $16,347,315.60 in compensatory damages against Defendants Sallyport Global Holdings, Inc.; JPD Private Trust Company, Ltd; and John P. DeBlasio, jointly and severally. Plaintiff is also entitled to prejudgment interest against the above Defendants in the amount of $5,111,111.39 calculated at the statutory rate of 9% per annum, or $4,030.84 per day, for 1268 days from July 5, 2011 until the date of the Court's Amended Opinion & Order [Dkt. 265], December 24, 2014. The total award to Plaintiff as of December 24, 2014 is $21,458,426.99 and interest shall accrue thereafter at the rate of $4,030.84 per day until entry of the final judgment.

Defendant Sallyport Global Holdings, Inc. is entitled to $227,364.22 in compensatory damages against Thomas W. Charron. Sallyport Global Holdings, Inc. is also entitled to prejudgment interest of $55,202.79 calculated at the statutory rate of 6% per annum, or $37.37 per day, for 1477 days from December 8, 2010 until the date of the Court's Amended Opinion & Order [Dkt. 265], December 24, 2014. The total award to Sallyport Global Holdings, Inc. as of December 24, 2014 is $282,567.01 and interest shall accrue thereafter at the rate of $37.37 per day until entry of the final judgment.

After the award to Sallyport Global Holdings, Inc. of $282,567.01 plus $37.37 per day after December 24, 2014, is set off against the award to Plaintiff Thomas W. Charron of $21,458,426.99 plus $4,030.84 per day after December 24, 2014, Plaintiff is awarded as a final judgment the amount of **$21,175,859.98**, plus **$3,993.47** per day of additional prejudgment interest until entry of final judgment, and thereafter, post-judgment interest at the applicable federal interest rate of 0.23% until such time as the final judgment is paid.

Dated: Dec 31 2014
   New York, New York

SO ORDERED:

_____  12/31/14
WILLIAM H. PAULEY III
United States District Court
Southern District of New York

-2-

*Counsel of Record:*

Brian Glasser, Esq.
Athanasios Basdekis, Esq.
James B. Perrine, Esq.
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV 25301
*Counsel for Plaintiff*


Brian P. Waagner, Esq.
Michael Gatje, Esq.
Elizabeth Leavy, Esq.
Thomas Rath, Esq.
HUSCH BLACKWELL, LLP
750 17th Street NW, Suite 900
Washington, DC 20006
*Counsel for Defendants*

<u>ADDENDUM B TO FORM C</u>

*Charron v. Sallyport Global Holdings, Inc., et al.*, Case No. 15-256

<u>Issues to Be Raised on Appeal</u>

1.      Did the District Court err in finding that Defendants were liable to Plaintiff Charron under Section 2.04 of the Stock Purchase Agreement dated December 7, 2010 (the "SPA"), where the court disregarded the terms of an arm's length transaction for the sale of Sallyport Global Holdings, Inc. and instead substituted its own valuation for one component of that transaction where there was no finding of fraud or other similar conduct?

<u>Standard of Review</u>:  This issue is reviewed *de novo*.

2.      Did the District Court err in awarding Plaintiff 20% of the total amount of the proceeds the court determined Defendants received from the sale of Sallyport Global Holdings, Inc. where the Court adopted an exceedingly narrow reading of Section 2.04 of the SPA that is contradicted by the context of the SPA and the evidence adduced at trial?

<u>Standard of Review</u>:  This issue is reviewed *de novo*.

3.      Did the District Court err when it included the transfer of certain assets of Sallyport Global Holdings around the time of the sale of the company as part of the total compensation attributable to that sale where the transaction by which the company was sold was on a "cash free, debt free" basis?

<u>Standard of Review</u>:  This issue is reviewed *de novo*.